UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT MEIDE,

    Plaintiff,

v.                                                        CASE NO. 3:18-cv-1037-J-34MCR

PULSE EVOLUTION CORPORATION,
*et al.*,

    Defendants.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on the Pulse Defendants' Expedited Motion for [an] Immediate Order Staying Third-Party Discovery, Expedited Motion to Quash Subpoenas and/or for a Protective Order ("Motion") (Doc. 54) and Plaintiff's Opposition thereto (Doc. 57). For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**.[1]

**I.**     **Introduction**

On August 27, 2018, *pro se* Plaintiff, Scott Meide, initiated this action by filing a seven-count Complaint against Defendants, Pulse Evolution Corporation ("Pulse"), John Textor, Gregory Centineo, Julie Natale, Dana Tejeda, Agnes King,

---

[1] In his Opposition, Plaintiff requests that the Court "take judicial notice of the law and caselaw" contained therein. (Doc. 57 at 5.) Plaintiff's request is denied. As explained in Judge Howard's Order of April 3, 2019, "[t]here is no need to ask the Court to take judicial notice of applicable law," as "[t]he Court is authorized to and will consider any legal authority and definitions asserted by the parties in their briefing." (Doc. 66 at 2.)

John King, Evolution AI Corporation ("Evolution"), Jordan Fiksenbaum, Laura Anthony, Michael Pollaccia a/k/a Michael Anthony, and Frank Patterson, alleging that he "has been the (repeated) victim of a series of scams perpetrated by the Defendants." (Doc. 1 at 1.) In Count One, Plaintiff asks the Court to convene a grand jury, pursuant to Rule 6(a), Fed.R.Crim.P., to investigate Defendants' alleged violations of federal law. (*Id.* at 29.) Count Two alleges securities fraud for Defendants' ongoing misrepresentations that "began in the fall of 2013 and continued until May of 2018." (*Id.* at 30.) Count Three is for aiding and abetting against Defendants Agnes King, Laura Anthony, and Michael Pollaccia. (*Id.* at 32.) The remaining counts are against all Defendants: Count Four is for breach of good faith and fair dealing, Count Five is for breach of fiduciary duty, Count Six is for fraud, and Count Seven is for civil conspiracy. (*Id.* at 33-35.) Defendants have filed motions to dismiss the Complaint, which are pending before the Court. (Docs. 22, 24, 28, 31.)

At issue in the instant Motion are two Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, which Plaintiff served on non-parties, V Stock Transfer, LLC ("V Stock Transfer") and Island Capital Management, LLC d/b/a Island Stock Transfer ("Island Stock Transfer"). (Doc. 54.) Defendants Pulse, Evolution, John Textor, Jordan Fiksenbaum, and Frank Patterson (collectively, the "Pulse Defendants"), move, on an expedited basis, for:

(1) an order temporarily staying the third-party discovery[2] while the Court resolves the Motion;

(2) an order quashing the two subpoenas pursuant to Rule 45(a), (c)-(d), Fed.R.Civ.P.;

(3) a protective order, pursuant to Rule 26(c), Fed.R.Civ.P., prohibiting Plaintiff from obtaining, disclosing, and utilizing the discovery sought through the subpoenas, which includes confidential commercial information that Plaintiff has threatened to use beginning February 18, 2019 to contact and harass non-party investors of Defendant Pulse and non-party Recall Studios, Inc. ("Recall Studios"); and

(4) an award of attorneys' fees and costs pursuant to Rules 26, 37, and 45, Fed.R.Civ.P. (*Id.*)

In support of the Motion, the Pulse Defendants submit the Declaration of John Textor, who is the principal founder of Defendants Pulse and Evolution, and currently a Chief Executive Officer of Recall Studios. (Doc. 54-2 at 2-3.) The Declaration provides in relevant part:

> 3. . . . At all material times, Evolution has been the parent entity and majority stakeholder in Pulse. In late 2018, non-party [Recall Studios] acquired Evolution and Evolution's majority stake in Pulse. . . .

---

[2] Defendants represent that as of February 6, 2019, Island Stock Transfer has already produced responsive documents, while V Stock Transfer has not yet responded to the subpoena. (Doc. 54 at 4 n.2.)

4. In addition to numerous others, Defendants Fiksenbaum, Patterson, and I [Textor] have been and/or are shareholders in Pulse and Recall Studios.

5. Plaintiff, Scott Meide's company, Jacksonville Injury Center, LLC ("JIC") was an investor in Pulse and Evolution. Plaintiff, individually, is not an investor of Pulse, Evolution, or Recall Studios. Regardless, Plaintiff has been engaged for some time now in disseminating false information about JIC's prior investments and the Defendants. This has included Plaintiff contacting some of Pulse's shareholders and falsely asserting that the Defendants have committed criminal acts. I, among others with Pulse, Evolution, and Recall Studios, have received communications from investors questioning Plaintiff's veracity.

6. Plaintiff has sent this false and misleading information to Pulse's and Evolution's shareholders, among others, to interfere with the Pulse's and Evolution's investment relationships and to harass, annoy, defame and cause reputational injury to Defendants – all because they refused to respond to Plaintiff's threats with monetary payments (to which Plaintiff was and is not entitled).
. . .

8. . . . V Stock Transfer and Island Stock Transfer are independent corporate entities unrelated to Pulse, Evolution, or Recall Studios.

9. Plaintiff is demanding V Stock Transfer and Island Stock Transfer produce sensitive and confidential commercial information; specifically, the names, emails, and private contact information of Pulse's and Recall Studios' respective shareholders, as well as the amount of each shareholder's investment contribution(s) since January 1, 2013 and the date of such contribution(s). Pulse and Evolution have an interest in the confidential shareholder and monetary investment information Plaintiff has sought via his subpoenas. Further, together with Defendants Fiksenbaum and Patterson, I have a personal right in the information sought by Plaintiff's subpoenas as a shareholder in Pulse and/or Recall [Studios] with an interest in keeping my addresses, phone numbers, emails, and investment contributions confidential.

10. Pulse, Evolution, and Recall take strenuous steps to maintain the confidentiality of the sensitive information sought by Plaintiff, as have V Stock Transfer and Island Stock Transfer in enacting rigorous rules for the release of such information, essentially only in response to a subpoena. The investment information Plaintiff's subpoenas seek is not publicly available and, aside from receiving the information from individual investors, is unobtainable from any other source, save for tax filings by the individual investors.

11. The Defendants, along with Recall Studios, will suffer irreparable harm if Plaintiff is permitted to advance his campaign of harassment and reputation-harming dissemination of false information by acquiring and using Pulse's and Recall Studios' confidential, commercially sensitive investor information. Disclosure of this information not only could cause tension between the corporate entities and their shareholders as those investors look to ascertain why their information has been released and they are being contacted by Plaintiff, but also drive investors who feel that their confidentiality has been compromised away from the Defendants and Recall [Studios], thus depriving them of the monetary benefit of shareholder contributions. Such an undue burden would be irreparable and likely irrecoverable.

(*Id.* at 3-5.)

Plaintiff initially served two *typewritten* subpoenas and a Notice of Intent to Issue Subpoenas, via e-mail, on December 26, 2018. (Doc. 54-1.) The typewritten subpoena to V Stock Transfer demanded "[a] list of names, addresses, and phone numbers of all investors in [Pulse] showing when they invested and the amount since May 31, 2013." (*Id.* at 7.) The typewritten subpoena to Island Stock Transfer demanded "[a] list of names, addresses, and phone numbers of all investors in Recall Studios [], a For-Profit Florida Corporation, showing when they invested and the amount since January 1,

5

2013."  (*Id.* at 10.)  The typewritten subpoenas failed to identify a date, time, or place for production, as required by Rule 45.  (*Id.* at 7, 10.)

Plaintiff gave Defendants twelve hours to indicate whether they objected to the proposed subpoenas and Notice of Intent to Issue Subpoenas.  (*Id.* at 2.)  Despite Defendants' objections, on December 28, 2018, Plaintiff served *handwritten* subpoenas on V Stock Transfer and Island Stock Transfer.  (Docs. 54-3, 54-4.)  The handwritten subpoenas differ from the typewritten ones in that they also seek "emails of all investors" in Pulse and Recall Studios, respectively.  (Doc. 54-3 at 2; Doc. 54-4 at 2.)  Like the typewritten subpoenas, the handwritten subpoenas do not identify a date, time, or place for production, as required by Rule 45(a), Fed.R.Civ.P.  (*Id.*)  The Pulse Defendants state that Plaintiff did not provide them with copies of the handwritten subpoenas before serving them on V Stock Transfer and Island Stock Transfer.  (Doc. 54.)

On February 7, 2019, defense counsel sent a cease-and-desist letter to Plaintiff as to the information obtained from Island Stock Transfer through the subpoena.  (Doc. 54-5.)  On February 8, 2019, Plaintiff responded with a letter, stating that he intended to file a motion to compel and to start contacting, as early as February 18, 2019, the shareholders of Recall Studios for whom he had addresses, for the following purpose:

> a. Direct them to [his] website which will display [his] initial Complaint and [his] Motion to Compel Discovery.
> b. [He] will then ask each and every one of them if they know

of any "billionaire investors" or "institutional investors" that Recall Studios actually has.

    c. [He] will also ask them if they know how to redeem restricted stock for actual U.S. Currency.

(*Id.* at 2-3.)

On February 20, 2019, before the Opposition was filed, the Court took the Motion under advisement and determined it was appropriate to preserve the status quo pending receipt of any response to the Motion and the Court's ultimate ruling thereon. (Doc. 56.) The Court directed the Pulse Defendants to immediately serve the Order on the third-parties who had been served with the subpoenas and instruct them that no documents should be produced until further order of this Court. (*Id.* at 1.) The Court stayed any third-party discovery, including disclosure and use of information that Plaintiff might have already obtained from third-parties, until resolution of the instant Motion. (*Id.* at 1-2.)

**II.    Standard**

    **A.    Quashing a Subpoena**

Rule 45(d)(3), Fed.R.Civ.P., sets forth the circumstances in which quashing or modifying a subpoena is either required or permitted:

> **(A)** *When Required*. On timely motion, the court for the district where compliance is required[3] must quash or modify a subpoena that:

---

[3] Although the place of compliance is left blank, for the purpose of deciding the present Motion, the Court will assume that Plaintiff intended that compliance would take place in Jacksonville, Florida, because the only address included in the subpoenas is Plaintiff's address in Jacksonville, Florida.

7

  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.

**(B)** *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Fed.R.Civ.P. 45(d)(3).

"The scope of discovery under a Rule 45 non-party subpoena is the same as the scope of discovery under Fed.R.Civ.P. 26(b)[.]" *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton, LLC*, Case No. 8:11-cv-2437-T-30MAP, 2012 WL 12904394, *2 (M.D. Fla. May 10, 2012).

> The party seeking to quash the subpoena bears the burden to establish that the information sought is protectable under Rule 45, but the party issuing the subpoena bears the burden of proving the requests are relevant. Hence, in determining whether to quash the subpoena, the Court should balance the need for the particular discovery against the burden imposed with production and the opposing party's interest in maintaining confidentiality of the requested information.

*Id.* (citing *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2011)). "Other factors a court should consider are the relevance of the requests, the breadth of the requests, the time period covered by the requests, and the

particularity with which documents requested are described." *Black Knight Fin. Servs., Inc. v. Powell*, Case No. 3:14-mc-42-J-39MCR, 2014 WL 10742619, *2 (M.D. Fla. Dec. 11, 2014). "The status of a person as a non-party is a factor that weighs against disclosure." *Id.*

### B. Protective Order

Pursuant to Rule 26(c)(1), Fed.R.Civ.P.:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> **(A)** forbidding the disclosure or discovery;
> **(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> **(C)** prescribing a discovery method other than the one selected by the party seeking discovery;
> **(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> . . .
> **(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . .

Fed.R.Civ.P. 26(c)(1).

"The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir.1985)). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped

and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins.*, 231 F.R.D. at 429-30 (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *see also Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("To make a showing of good cause, the movant has the burden of showing the injury 'with specificity.' In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection. . . . Moreover, the alleged harm must be significant, not a mere trifle.") (internal citations omitted).

The scope of discovery is governed by Rule 26, which allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "The term 'relevant' in this definition is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.'" *Auto-Owners Ins.*, 231 F.R.D. at 430 (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

"The scope of discovery, though, is not without limits." *Id.* As stated in Rule 26(b)(2)(C), Fed.R.Civ.P.:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed.R.Civ.P. 26(b)(2)(C).

### III. Discussion

As an initial matter, the Pulse Defendants have standing to challenge the non-party subpoenas. In the Eleventh Circuit, "standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas." *Auto-Owners Ins.*, 231 F.R.D. at 429[4]; *see also Quillet v. Jain*, No. 6:12-cv-1283-Orl-28TBS, 2014 WL 1918046, *2 (M.D. Fla. May 12, 2014) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the objecting party claims some personal right or privilege with regard to the documents sought."); *Medi-Weightloss*, 2012 WL 12904394 at *3 ("A party has standing to object to a non-party subpoena *duces tecum* with respect to privilege, trade secrets, confidential research, commercial information, or similar grounds personal to a party.").

Here, the subpoena to V Stock Transfer demands a list of names,

---

[4] Also stating that parties "have standing to move to quash or modify [a] subpoena based on inadequate notice." *Auto-Owners Ins.*, 231 F.R.D. at 428.

addresses, phone numbers, and emails of all investors in Pulse, showing when they invested and the respective amounts since May 31, 2013. The subpoena to Island Stock Transfer demands a list of names, addresses, phone numbers, and emails of all investors in Recall Studios, showing when they invested and the respective amounts since January 1, 2013. As shareholders in Pulse and Recall Studios, Defendants Textor, Fiksenbaum, and Patterson "have a personal right in the information sought by Plaintiff's subpoenas . . . with an interest in keeping [their] addresses, phone numbers, emails, and investment contributions confidential" (Doc. 54-2 at 4). *See Quillet*, 2014 WL 1918046 at *2 ("Many courts have ruled that parties have a personal interest in the confidentiality of their financial records that is 'sufficient to confer standing to challenge a subpoena directed to a third-party.'"); *Falato v. Fotografixusa, L.L.C.*, No. 09-5232 (MAS), 2013 WL 1846807, *4 (D.N.J. Apr. 30, 2013) ("Hoather clearly has a privacy interest in his financial information. . . . Consequently, the Court finds that Hoather has standing to move to quash the ITEX subpoena to the extent it seeks records/statements concerning any ITEX account held by him.").

Pulse and Evolution (which is now Recall Studios) also "have an interest in the confidential shareholder and monetary investment information Plaintiff has sought via his subpoenas," as they each "take strenuous steps to maintain the confidentiality of the sensitive information sought by Plaintiff" (Doc. 54-2 at 4). *See Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, No. CIV-11-1157-M, 2015

12

WL 5254534, *3 (W.D. Okla. Sept. 9, 2015) (finding that "STS does have standing to move to have Core's subpoenas to STS's investors and vendors quashed").[5]

Turning to the subpoenas, the Court finds that they should be quashed pursuant to Rule 45, Fed.R.Civ.P. First, Plaintiff did not serve the Pulse Defendants with copies of the handwritten subpoenas, which also asked for the investors' emails, before serving them on V Stock Transfer and Island Stock Transfer, as required by Rule 45(a)(4), Fed.R.Civ.P. Further, the subpoenas failed to identify a date, time, or place for production, as required by Rule 45(a)(1)(A)(iii), Fed.R.Civ.P. As such, the subpoenas should be quashed pursuant to Rule 45(d)(3)(A)(I)-(ii), Fed.R.Civ.P. *See Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552-53 (E.D. Penn. 2010) ("By failing to receive prior notice of the information sought from the non-party, a party is deprived of its greatest safeguard under the Rule, i.e., the ability to object to the release of the information prior to its disclosure. . . . Moreover, Ms. Gray mishandled discovery by not completely filling out the subpoena to Ms. Dombrowski. Ms. Gray failed to specify a time and place for production, and instead sought production 'at your earliest convenience.'").

---

[5] Even assuming that the Pulse Defendants had only limited standing to challenge the third-party subpoenas pursuant to Rule 45, Fed.R.Civ.P., their Motion is also based on Rule 26, Fed.R.Civ.P.; as such, "[t]he Court may, and it does, deem Defendants' motion to quash as a motion for a protective order under Rule 26(c)." *Auto-Owners Ins.*, 231 F.R.D. at 429.

The Pulse Defendants argue that the subpoenas should also be quashed because they exceed the scope of permissible discovery. They explain that the subpoenas seek irrelevant, confidential information that has no relationship to Plaintiff's claims and is disproportionate to the needs of the case. The Pulse Defendants assert that Pulse's and Recall Studios' investors, their contact information, contribution amounts, and investment dates from 2013 to the present are irrelevant to Plaintiff's claims. Plaintiff does not seem to address the Pulse Defendants' arguments as to relevancy. However, the Court has reviewed Plaintiff's Complaint and agrees with the Pulse Defendants that:

> [The Complaint] contains no allegations of systemic violations of law affecting investors other than Plaintiff that would warrant the type of discovery Plaintiff[] has sought via non-party subpoenas. Thus, information about other individual and corporate investors would not assist in resolving Plaintiff's claims. Moreover, as in *Core Labs.*, the requested information about the amount of contributions made by each of Pulse's and Recall Studios' investors over a six year period can have no bearing on any of the issues pled in this case.

(Doc. 54 at 19.)

The Pulse Defendants further argue that the subpoenas were purposefully designed to harass, embarrass, and oppress them, and that they present a risk of unfair prejudice and undue burden to the Pulse Defendants. For example, while Plaintiff asks for investment information going back to 2013, he alleges that he did not invest in Pulse until July 18, 2014. (*See* Doc. 1 at 13; Doc. 54-1 at 7.) Also, while Plaintiff asks for information about Recall Studios' investors going

back to January 1, 2013, his Complaint seems silent as to any investment Plaintiff has made in that company. The Pulse Defendants point out that "aspects of Plaintiff's securities fraud claims predating August 27, 2016 are barred under applicable statutes of limitations." (Doc. 54 at 21.) The Pulse Defendants also point out that "Plaintiff lays his true intentions bare in his February 8 letter." (*Id.*)

In his February 8, 2019 letter to defense counsel, Plaintiff stated that he intended to file a motion to compel and to start contacting, as early as February 18, 2019, the shareholders of Recall Studios for whom he had addresses, for the following purpose:

> a. Direct them to [his] website which will display [his] initial Complaint and [his] Motion to Compel Discovery.
> b. [He] will then ask each and every one of them if they know of any "billionaire investors" or "institutional investors" that Recall Studios actually has.
> c. [He] will also ask them if they know how to redeem restricted stock for actual U.S. Currency.

(Doc. 54-5 at 2-3.) In response to the present Motion, Plaintiff states that his Complaint and Motion to Compel Discovery are public records; that he seeks the information about "billionaire investors" or "institutional investors" in order to show that there are no such investors; and that he intends to ask the shareholders of Recall Studios about ways "to redeem restricted stock for actual U.S. Currency" in order to determine whether Plaintiff's stock has any value. (Doc. 57 at 2.)

The Court agrees with the Pulse Defendants that Plaintiff's "plan" seems unrelated to the allegations in his Complaint and he has not established a

15

legitimate need for the information sought. Also, it is unclear why Plaintiff is attempting to obtain any information about "billionaire investors" or "institutional investors" from the shareholders, when he can potentially obtain such information directly from the corporate entity.[6] In addition, it appears that Plaintiff could ascertain the value of his stock through other, likely more reliable, means than simply asking shareholders of Recall Studios about ways "to redeem restricted stock for actual U.S. Currency."

In ascertaining Plaintiff's intentions, the Court finds the Declaration of Mr. Textor helpful, which states, in relevant part, that Plaintiff has been disseminating false information about Defendants to their shareholders. In particular, the Declaration states:

> The Defendants, along with Recall Studios, will suffer irreparable harm if Plaintiff is permitted to advance his campaign of harassment and reputation-harming dissemination of false information by acquiring and using Pulse's and Recall Studios' confidential, commercially sensitive investor information. Disclosure of this information not only could cause tension between the corporate entities and their shareholders as those investors look to ascertain why their information has been released and they are being contacted by Plaintiff, but also drive investors who feel that their confidentiality has been compromised away from the Defendants and Recall [Studios], thus depriving them of the monetary benefit of shareholder contributions. Such an undue burden would be irreparable and likely irrecoverable.

---

[6] In fact, Plaintiff's Opposition cites to Fla. Stat. § 607.1602, which provides for inspection of records by shareholders. It is unclear whether Plaintiff has sought to inspect the record of shareholders or any other records of the corporation pursuant to that statute.

16

(Doc. 54-2 at 5.)

Based on the foregoing, the Court finds it appropriate to quash Plaintiff's subpoenas under Rule 45(d)(3)(A)-(B), Fed.R.Civ.P., and to enter a protective order under Rule 26, Fed.R.Civ.P., prohibiting Plaintiff from obtaining, disclosing, and utilizing the discovery sought through the subpoenas to V Stock Transfer and Island Stock Transfer. To the extent the Pulse Defendants request an order temporarily staying the third-party discovery while the Court resolves the instant Motion, this request has already been granted. (*See* Doc. 56.) Finally, the Pulse Defendants' request for an award of attorneys' fees and costs pursuant to Rules 26, 37, and 45, Fed.R.Civ.P., is denied, because Plaintiff's response was substantially justified and/or other circumstances make an award of expenses unjust.

Accordingly, it is **ORDERED**:

The Motion (**Doc. 54**) is **GRANTED in part** and **DENIED in part** as stated in this Order.

**DONE AND ORDERED** at Jacksonville, Florida, on April 8, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Any Unrepresented Party