# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SCOTT MEIDE,

       Plaintiff,

                          Case No. 3:18-cv-1037-MMH-MCR

vs.

PULSE EVOLUTION CORPORATION,
et al.,

       Defendants.

_____/

# O R D E R

    **THIS CAUSE** is before the Court on multiple motions for sanctions.  See Defendants Centineo, Natale, Agnes King and John King's Motion for Sanctions (Doc. 156; Centineo Sanctions Motion); Pulse Defendants' Motion for Determination of Entitlement to Award of Sanctions and Incorporated Memorandum of Law (Doc. 157; Pulse Sanctions Motion); Defendants Laura Anthony's and Michael Anthony's Renewed Motion [for] Sanctions and Incorporated Memorandum of Law (Doc. 158; Renewed Anthony Sanctions Motion) (collectively, Sanctions Motions), all filed on January 29, 2021.  In the Sanctions Motions, Defendants seek an award of sanctions against Plaintiff Scott Meide pursuant to the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(c).  See generally Sanctions Motions.  Defendants Laura and Michael Anthony also seek sanctions pursuant to Rule 11, Federal Rules of

Civil Procedure (Rule(s)) against both Meide and his counsel, William H. McLean.  See Anthony Motion at 1.  Meide, through counsel, filed responses in opposition to the Sanctions Motions on March 3, 2021.  See Plaintiff's Response to Defendants Laura Anthony's and Michael Anthony's Renewed Motions for Sanctions (Doc. 161; Response to Renewed Anthony Sanctions Motion); Plaintiff's Response to Defendants Gregory Centineo, Julie Natale, Agnes King and John King's Motion for Sanctions with Incorporated Memorandum of Law (Doc. 162; Response to Centineo Sanctions Motion); Plaintiff's Response to Defendants Pulse Evolution Corporation, Evolution AI Corporation, John Textor, Jordan Fiksenbaum and Frank Patterson Motion for Determination of Entitlement to Award of Sanctions (Doc. 163; Response to Pulse Sanctions Motion).  Accordingly, this matter is ripe for review.[1]

---

[1] The Court notes that the Anthonys filed an initial motion for sanctions under Rule 11 based on the Initial Complaint on November 16, 2018.  See Defendants Laura Anthony's and Michael Anthony's Motion for Rule 11 Sanctions and Incorporated Memorandum of Law (Doc. 43).  In accordance with Rule 11(c)'s safe harbor provision, prior to filing, the Anthonys served Meide with the motion on October 25, 2018.  See id. at 1 n.1.  Meide declined to withdraw or amend his claims against the Anthonys at that time.  In addition, the Court held a hearing in this case on July 24, 2019, during which the Court advised Meide of the PSLRA's mandatory sanctions provision, and particularly as to the Anthonys, cautioned him about the possibility of sanctions.  See Minute Entry (Doc. 75; Hearing); see also Transcript of Motion Hearing (Doc. 77; Tr.) at 24-26.  On September 4, 2021, the Court entered an Order dismissing the claims raised in this case and reserving jurisdiction on the issue of sanctions.  See Order (Doc. 141; Dismissal Order) at 40-41.  In the Dismissal Order, the undersigned notified Meide that it must consider whether sanctions are warranted under the PSLRA for the pleadings filed in this action.  See Dismissal Order at 38-40.  When the parties were unable to resolve the sanctions issue at mediation, the Court directed briefing on the matter.  See Order (Doc. 147).  Although Meide responded to the Sanctions Motions through counsel, he has not presented any affidavit, declaration, or other evidence regarding the sanctions issue, nor has he requested an additional opportunity to be heard.  Neither Meide nor his counsel argue that they did not receive sufficient notice or opportunity to be heard on the issue

## I.    Background[2]

### A. Initial Complaint

This action arises out of Meide's decision to invest approximately $775,000 in Pulse Evolution Corporation and Evolution AI Corporation by purchasing shares of stock in those companies over a series of three transactions in 2014, 2015, and 2018.   Significantly, Meide did not purchase the shares in his own name, but rather through a business, Jacksonville Injury Center, LLC (JIC).   According to Meide, he decided to invest in Pulse and Evolution AI at the urging of Defendants John Textor, Gregory Centineo, Julie Natale, Dana Tejeda, Frank Patterson, Agnes King and John King.   When his investments did not pan out the way Meide had anticipated, Meide initiated this action against the above Defendants, as well as Pulse's Chief Executive Officer Jordan Fiksenbaum, Laura Anthony, who is an attorney for Pulse, and her husband Michael Anthony.   In the Initial Complaint, Meide asserted a claim for securities fraud under the PSLRA, a request to convene a grand jury, a claim for aiding and abetting securities fraud, and myriad state law claims. See generally Initial Complaint (Doc. 1).   The factual allegations in the Initial

---

of sanctions.   Neither Meide nor any Defendant has requested a hearing on this matter.   As such, the Court will proceed to decide this issue based on the briefs and the record in this case.

[2] The Court set out the extensive procedural history and background of this case in the September 4, 2020 Dismissal Order.   The Court presumes the reader's familiarity with that Order and will use the same defined terms herein.

Complaint were lengthy, difficult to follow, and largely conclusory. Nevertheless, Meide's allegations generally related to misleading statements that Textor, Centineo, and John King made to Meide to induce him to invest in Pulse and later Evolution AI. These statements often concerned projects the companies were involved in, projections about the value of the stock, plans to lift the restrictions on the stock and take the companies public, the value of Pulse's technology, and representations about other investors. Defendants Natale, Tejeda, and Agnes King were alleged to have set up the calls, been present at meetings or on calls, and reinforced the statements of others about the virtues of the investment. Meide alleged that Patterson was a Pulse co-founder who also "extolled the great virtues of investing in Pulse," see Initial Complaint ¶ 31, and identified Fiksenbaum as the Chief Executive Officer of Pulse who was "directly responsible for all governance and adherence to fiduciary and ethical behavior." Id. ¶ 105.

With regard to Defendant Laura Anthony, Meide alleged that she was "corporate counsel for Pulse." Id. ¶ 85. Meide's primary allegation against Laura Anthony was based on a copy of an email he sent to Anthony on July 26, 2018, in which he demanded that she "get together with the listed defendants you represent and advise them to pay me back, in full, within the next 10 days." See Initial Complaint ¶ 85. Meide told Anthony that if he was not reimbursed in full within ten days, "the alternative is that I will add you and your husband

to this lawsuit and file it on or before August 10 of this year." Id.  Anthony refused and accused Meide of extortion.  Id.  At the relevant time, Defendant Michael Anthony was Laura Anthony's husband but had no other apparent connection to the events of this lawsuit.  Id. ¶ 87.

Defendants filed motions to dismiss the Initial Complaint in its entirety, which Meide opposed, and on July 24, 2019, the Court held a hearing to address the motions.  See Minute Entry (Doc. 75; Hearing).   At the Hearing, the Court explained to Meide, at length, the pleading standards that apply in federal court, including the heightened pleading standards under Rule 9(b) and the PSLRA that applied to his securities fraud claim.  See Tr. at 15-19. Ultimately, the Court held that the Initial Complaint failed to meet those standards and constituted an impermissible shotgun pleading such that Defendants' motions to dismiss were due to be granted on that basis.  See Tr. at 7-11, 19-21, 26-28.   However, given Meide's pro se status, the Court provided Meide with the opportunity to file an amended complaint.[3]  With respect to his securities fraud claim, the Court instructed Meide that

> in any amended complaint, if you pursue one, you have to identify the specific statement that was made as to each transaction, who made the statement, when it was made, why the statement was false and misleading, and you have to state with particularity facts giving rise to a strong inference that each defendant, with respect

---

[3] The Court dismissed with prejudice Meide's claim styled as a request to convene a grand jury and his claim for aiding and abetting securities fraud.  See Tr. at 28.

> to each misrepresentation or omission, acted with the requisite scienter.

See Tr. at 21.   To ensure that Meide had the benefit of the Court's instructions in preparing his amended pleading, the Court directed the court reporter to prepare a transcript of the Hearing, which she filed on the Court docket on July 31, 2019.   See Transcript (Doc. 77).

The Court also advised Meide of the mandatory sanctions provisions set forth in the PSLRA.   Id. at 24-25.   In particular, the Court encouraged Meide to obtain a lawyer because in the event he filed an amended complaint "against any party that contains allegations that ultimately are determined to be insufficient, [he faced] the possibility of having a fairly substantial sanction award imposed against [him]."   Id. at 25-26.   The Court instructed Meide to "carefully consider who [he] name[d] as defendants, and whether [he] actually [had] a cause of action against each of them, because of that sanctions provision in the statute . . . ."   Id. at 32.   The Court noted that Laura and Michael Anthony had already filed a motion for sanctions against Meide pursuant to Rule 11.   See Defendants Laura Anthony's and Michael Anthony's Motion for Rule 11 Sanctions and Incorporated Memorandum of Law (Doc. 43; First Anthony Sanctions Motion), filed November 16, 2018.   Although the Court deferred ruling on the First Anthony Sanctions Motion at that time, the Court

cautioned Meide of its "healthy skepticism as to whether the claim against Laura Anthony survives, doubly so with regard to her husband." See Tr. at 24.

At the Hearing, the Court also addressed Defendants' argument that Meide lacked standing to bring the securities fraud claim.[4]  See Tr. at 21-24. Specifically, in their motions to dismiss the Initial Complaint, several Defendants raised the fact that JIC, and not Meide individually, made the purchases described in the Initial Complaint such that under the PSLRA only JIC could bring a claim for securities fraud based on those purchases.   A week before the Hearing, in an apparent attempt to resolve the issue, Meide filed a document purporting to assign JIC's "rights, claims, etc. relating to any and all Pulse Evolution stock purchase transactions" to Meide.  See Plaintiff's Notice of Assignment (Doc. 72).   According to Meide, JIC is owned by a trust, and he "hold[s] 100 percent of the shares of that trust."   See Tr. at 6.   At the Hearing, the Court found that Meide's Notice of Assignment was ineffectual, see Tr. at 6-7, and, although the Court declined to rule on this basis, cautioned Meide that it had "very significant concerns" about his standing to assert the securities fraud claim.  Id. at 21.   The Court explained that JIC, as the purchaser of the securities, appeared to be the proper plaintiff, id. at 22, and that as such, Meide

---

[4] As noted in the Court's September 4, 2020 Order, this argument is not actually one of Article III standing, but rather that Meide is not in the class of plaintiffs authorized to bring suit under the PSLRA because he is not the actual purchaser of the securities at issue.  See Dismissal Order at 10 n.5.   Nevertheless, for ease of reference, the Court will refer to this contention as the standing argument.

would need to obtain a lawyer "because JIC is an artificial entity, and an artificial entity must be represented by legal counsel in court." Id. at 23-24. The Court did not opine on whether Meide would be able to successfully assign JIC's claims to himself for purposes of this lawsuit, as he had previously attempted to do. Id. at 22-24.

## B. Amended Complaints

After obtaining an extension of time in which to do so, see Order (Doc. 84), Meide filed an Amended Complaint (Doc. 85) on September 24, 2019. Notably, Meide filed the Amended Complaint in his own name, without counsel, and named all the same Defendants, except Michael Anthony. See Amended Complaint at 1. However, because Meide failed to comply with Rules 8 and 10, the Court sua sponte struck the Amended Complaint. See Order (Doc. 86), entered October 4, 2019. Specifically, the Court held that Meide had "drafted the Amended Complaint in essay format," and failed "to specify which of the alleged facts in his 'Statement of Facts' are intended to support which specific claims." Id. at 3. The Court provided Meide with a final opportunity to file a proper pleading and instructed him to "carefully review both this Order and the Transcript of the Hearing in preparing a second amended complaint." Id. at 4.

On November 1, 2019, Meide filed his Second Amended Complaint (Doc. 88). In the Second Amended Complaint, Meide once again reasserted the securities fraud claim, in his own name, against all the same Defendants, except

Michael Anthony.  <u>See</u> Second Amended Complaint at 1, 24.  Significantly, Meide continued to ignore the fact that JIC was the actual purchaser of the shares at issue.  He did not allege whether JIC had assigned its claims to him, indeed, he did not mention JIC in the pleading at all.  Rather, Meide alleged that <u>he</u> purchased the shares at issue.  <u>See</u> Second Amended Complaint ¶¶ 42, 71, 87.  Defendants moved to dismiss the Second Amended Complaint (Docs. 94, 96, 98), which Meide opposed (Docs. 107, 109, 115).  Defendants again raised Meide's lack of standing to assert his claims.  <u>See</u> Centineo Motion (Doc. 94) at 5; Pulse Motion (Doc. 98) at 9-10.  Defendants also argued that Meide still failed to satisfy the applicable pleading standards, the same heightened standards about which the Court had previously instructed Meide in some detail at the Hearing.

Despite the Court's prior ruling on the applicable standards, and aware of the Court's significant concerns about his standing, Meide failed to seriously address either argument in his responses to Defendants' motions to dismiss. Instead, Meide used irrelevant quotations, rhetorical questions, and sarcasm in an effort to brush aside these deficiencies.  For example, he began his Response to the Centineo Motion with a quote from <u>Gulliver's Travels</u> criticizing the use of legal precedent.  <u>See</u> Response to Centineo at 1.  In his Response to the Pulse Motion, he quoted <u>Alice in Wonderland</u>, supposedly as a critique of the way the legal system uses words, and later recited what is purportedly an

Abraham Lincoln maxim on the meaning of words.   <u>See</u> Response to Pulse at 5, 10.   Meide's point was often difficult to decipher and his responses to Defendants' arguments on the standing issue were non-sensical.   <u>See</u> Response to Centineo Motion to Dismiss (Doc. 109) at 5; Response to Pulse Motion to Dismiss (Doc. 115) at 1-2, 6, 9.

Meide was similarly dismissive in responding to Defendants' arguments that he failed to meet the heightened pleading standards necessary to state a claim for securities fraud under the PSLRA.   In his responses, Meide quibbled with Defendants' description of the standards and insisted that "Defendants are well aware of what Plaintiff is claiming."   <u>See</u> Response to Pulse at 6-7; Response to Centineo at 2-3.   He further asserted that "[s]cienter in this case should be self-evident," but made no attempt to explain what allegations supported this assertion.   <u>See</u> Response to Pulse at 8-9.   Rather than address how the Second Amended Complaint corrected the deficiencies that the Court had previously identified, Meide insisted that "[h]ypertechnical pleading is simply not required," and contended that he could not possibly allege "exactly who said what and when . . . ."   <u>See</u> Response to Centineo at 2-3.   Indeed, Meide insisted that he needed discovery to ascertain the necessary facts.   <u>See</u> Response to Anthony at 1 (stating that he "cannot identify all the facts necessary to develop his case unless and until he is allowed discovery"); <u>see also</u>

Response to Pulse Motion at 6 ("In order to completely determine who did what there is a necessity for discovery . . . .").

Seven months after the Second Amended Complaint was filed and while the motions to dismiss were fully briefed and pending before the Court, counsel for Meide appeared in this action for the first time.  <u>See</u> Notice of Appearance on Behalf of Plaintiff Meide, and Real Party-in-Interest Jacksonville Injury Center, LLC (Doc. 116), filed June 11, 2020.  Immediately after appearing, Meide's new counsel attempted to restart the case in the name of JIC.  <u>See</u> Dismissal Order at 4-5.  Although the first motions counsel filed failed to comply with the Local Rules, on July 7, 2020, Meide, through counsel, filed Plaintiff's Supplement to Motion for Substitution of Real Party in Interest with Certification of Good-Faith Conference (Doc. 127; Motion to Substitute) and Plaintiff's Supplement to Motion for Leave to File Second Amended Complaint with Certification of Good Faith Conference (Doc. 128; Motion to Amend).  In the Motion to Substitute, Meide acknowledged that JIC was the actual purchaser of the securities at issue in this litigation and sought leave to substitute JIC as the plaintiff.  <u>See</u> Motion to Substitute at 2-3.   In the Motion to Amend, Meide sought leave to file a Proposed Third Amended Complaint (Doc. 121).  In this fourth version of his pleadings, Meide dropped his claims against Tejeda, Natale, and Agnes King entirely, but continued to assert a federal securities fraud claim against Textor, Patterson, John King, Centineo

and Pulse.   Although Meide no longer asserted a securities fraud claim against Laura Anthony, he sought to bring new claims against her for aiding and abetting fraud and violating the Florida Deceptive and Unfair Trade Practices Act.[5]

On September 4, 2020, the Court entered the Dismissal Order granting Defendants' Motions to Dismiss to the extent the Court dismissed Meide's securities fraud claim under the PSLRA with prejudice and dismissed his remaining state law claims without prejudice to refiling in the appropriate state court.   See Order at 40-41.   The Court determined that Meide had again failed to meet the heightened pleading standards applicable to his federal securities fraud claim because "he continue[d] to utilize only conclusory allegations regarding the false or misleading nature of the statements and Defendants' intent when the statements were made."   See Dismissal Order at 25.   The Court also found that Meide failed to allege with particularity any misleading omission and that many of the purportedly wrongful statements set forth in the Second Amended Complaint were simply nonactionable puffery on which no reasonable investor would rely.   Id. at 25-28.

---

[5] Notably, despite counsel's assertion in the Motion to Substitute that "the facts, causes of action and parties do not change with the [Proposed Third] Amended Complaint," see Motion to Substitute at 3, the Proposed Third Amended Complaint included a new Defendant, Face Bank Group, as well as several new causes of action.   See generally Proposed Third Amended Complaint.

In the Dismissal Order, the Court also denied the Motion to Amend as untimely and the Motion to Substitute as moot.   See id. at 4-10.   In addressing the Motion to Amend, the Court made the following observations: 1) despite prior warning, Meide's counsel failed to include a memorandum of legal authority in support of the Motion to Amend as required by the Local Rules; 2) Meide's counsel did not acknowledge the specific Rules of Civil Procedure that applied to his request or cite the relevant legal authority; 3) the Proposed Third Amended Complaint was a quintessential shotgun complaint, an unacceptable form of pleading which the Court had previously addressed with Meide at the July 24, 2019 Hearing; and 4) Meide's counsel made no attempt to explain or justify the untimeliness of the request, show good cause for leave to amend, or demonstrate that Meide had acted with due diligence.   See id. at 6-7.   As to the Motion to Substitute, the Court noted that Meide had made no attempt to correct or avoid the standing problem until "well over a year after Defendants first raised the issue and long after the Court addressed the problem with Meide at the Hearing . . . ."   Id. at 9.   The Court nevertheless denied the Motion to Substitute as moot given its determination that the Second Amended Complaint was due to be dismissed for failure to state a claim and leave to amend was not warranted.   Id. at 10.

The Court directed the Clerk of the Court to enter Judgment in favor of Defendants and against Scott Meide on Count I of the Second Amended

Complaint, while reserving jurisdiction to determine the issue of sanctions.   Id. at 41.   In the Dismissal Order, the Court again notified the parties of the mandatory sanctions provision in the PSLRA, including its requirement that the Court further develop the record on certain issues.   Id. at 38-39.   Prior to engaging in a sanctions determination, the Court provided the parties with an opportunity to mediate the issue.   Id. at 41.   When the parties were unable to resolve the matter at mediation, see Mediation Report (Doc. 146), the Court set a briefing schedule and Defendants filed the instant Sanctions Motions accordingly.

## II.   Summary of the Arguments

### A. Pulse Defendants

In the Pulse Sanctions Motion, the Pulse Defendants argue that Meide lacked an objectively reasonable factual basis for filing a securities fraud claim as he was not the purchaser of the shares in Pulse or Evolution AI.   See Pulse Sanctions Motion at 7-8.   The Pulse Defendants also assert that Meide lacked any factual basis for suing Defendant Jordan Fiksenbaum in particular, given "the complete absence of Mr. Fiksenbaum from any of the events described in any complaint."   Id. at 8.   In addition, these Defendants maintain that sanctions are warranted because Meide filed this lawsuit in bad faith for an improper purpose.   Id. at 9.

As evidence of Meide's improper purpose, the Pulse Defendants point to two lawsuits that Meide filed pro se in the Central District of California.   Id. at 11; see also Declaration of John Textor in Support of Oppositions to Motion to Substitute Party and Motion for Leave to Amend Complaint (Doc. 137 at 3-8; Textor Decl.), Exs. 2-3.   In the first lawsuit, filed on May 23, 2019, Meide asked the court to force the United States Attorney for the Central District of California to allow Meide to present to a grand jury his grievances concerning a different failed investment with Textor and others.   See Textor Decl. ¶ 8, Ex. 2.   In the other lawsuit, filed on August 16, 2019, and spanning 145 pages, Meide asserted securities fraud and other claims arising out of that investment against over fifty Defendants, including many of the same Defendants named here.   See id., Ex. 3.   Notably, in that case, Meide sued not only Textor, but also his wife and then six-year-old son.   Id. ¶¶ 9-10, Ex. 3.

In his Declaration, Textor asserts that Meide filed these lawsuits as "part of a strategy to make sure that the allegations are repeated on the internet and visible to potential investors and the industry, all in an effort to pressure [Textor] and related defendants to settle with Mr. Meide."   See Textor Decl. ¶ 12.   The Pulse Defendants present evidence that the instant lawsuit and the California lawsuits are discussed in various places on the internet—including a 25-minute YouTube video, an investor message board, and a website found at www.takingbackjustice.com.   See id. ¶¶ 3-4, 6, 11, Exs. 1, 4; see also Pulse

Defendants' Notice of Filing Supplemental Evidence (Doc. 140).   Textor believes the creators of the "Taking Back Justice" website are working with Meide because when Meide sent the Initial Complaint to certain Defendants before filing, the metadata "contained references to one of the original authors, who [Textor] contacted directly and confirmed as one of the principals of Taking Back Justice."   See Textor Decl. ¶ 6.   Textor also maintains that Meide is responsible for the posting of the YouTube video due to "his personal on-camera appearance in related videos . . . ."   Id. ¶ 11.   And, on the investor message board, the individual posting as "fraud killer" identifies "my lawsuit" with the case number for this case and invites the readers to "email me" using the same email address that Meide provided in this lawsuit.   Compare Pulse Defendants' Notice of Filing Supplemental Evidence (Doc. 140) at 4 with Motion to File Electronically (Doc. 19) at 1.

In his Response to the Pulse Sanctions Motion, Meide relies on his allegations in the Proposed Third Amended Complaint to contend that he had a sufficient factual basis for filing this lawsuit.   While he does not dispute that JIC was the proper party to bring the claims asserted in this case, Meide maintains that this error did not prejudice Defendants and does not "change[] the facts underpinning the claims of fraud associated with the purchase of PEC shares of stock."   See Response to Pulse Sanctions Motion at 10-11.   Meide does not respond to the Pulse Defendants' contention that he is using this and

other lawsuits to disparage Textor and other Defendants on the internet and he makes no attempt to deny or rebut the statements in Textor's Declaration. Instead, Meide maintains that because he has made a good faith claim of fraud, even if inartfully pled, this "negates a claim of improper purpose." Id. at 13.

## B. Centineo Defendants

The Centineo Defendants also assert that Meide violated Rule 11(b) by asserting securities fraud claims in the Initial Complaint, First Amended Complaint and Second Amended Complaint without a sufficient factual or legal basis, and for an improper purpose. See Centineo Sanctions Motion at 13. In support, the Centineo Defendants point to Meide's repeated failure to meet the PSLRA's heightened pleading standards, his use of allegations grouping Defendants together without specifying who was responsible for what conduct or which statements, and his decision to continue filing the claims in his own name, rather than that of JIC, despite warning from Defendants and the Court that he was not the proper plaintiff. See id. at 10-12. The Centineo Defendants maintain that Meide's allegations as to Defendants Agnes King and Julie Natale were particularly deficient. See id. at 12-13. According to the Centineo Defendants, Meide pursued this case for the improper purpose of harassing Defendants and attempting to extort a settlement. Id. at 12-13. Like the Pulse Defendants, the Centineo Defendants point to the same derisive postings on the internet regarding this lawsuit, which appear to have originated

from Meide, as evidence of his improper purpose.   Id. at 3-4 (citing Pulse Defendants' Notice of Filing Supplemental Evidence (Doc. 140)).

In his Response, Meide again relies on the allegations set forth in the Proposed Third Amended Complaint to assert that he had a reasonable factual and legal basis for pursuing a securities fraud claim.   He maintains that his factual contentions are supported by his memory of the representations made to him coupled with factual records of corporate activity and press releases.   Id. at 13.   As to Agnes King and Julie Natale, who were dropped from the Proposed Third Amended Complaint, Meide cites to vague allegations in the Second Amended Complaint that these individuals participated in or arranged phone calls and reinforced or restated the claims of others to contend that he had a reasonable basis for alleging their involvement in the purported fraud.   Id. at 9-10.

Meide repeats his argument that the issue of standing did not prejudice Defendants and explains that he was "focused on his losses as the beneficial owner of the shares held by [JIC] . . . ."   Id. at 10-12.   As to his intent in filing the action, Meide provides the same vague response that he asserted in response to the Pulse Motion that:

> A good-faith claim of fraud, as shown by Plaintiff in this matter, however inartfully plead it may have been, negates a claim of improper purpose.   If a claim is made and backed with evidentiary support and is a non-frivolous extension or argument of law, then

any harm claimed by the several defendants is ancillary and not the result of intent.

See id. at 13.   But remarkably, as with the Pulse Sanctions Motion, Meide does not acknowledge or address the Centineo Defendants' contention that Meide posted on the internet about this lawsuit to harass and embarrass Defendants and extract a settlement.

## C. Anthony Motion

The Anthonys assert that sanctions are appropriate not only against Meide himself, but also his counsel. As to Meide, the Anthonys argue that sanctions are warranted because he lacked a sufficient factual or legal basis to bring any of the claims asserted against the Anthonys and persisted with his baseless claims despite notice of their deficiencies from the First Anthony Sanctions Motion and the Court's admonishments at the July 24, 2019 Hearing. In addition, the Anthonys maintain that Meide pursued this action against them with an improper purpose.   Id. at 8-9, 13.   The Anthonys point to the email Meide sent to Laura Anthony threatening to sue her and her husband if she did not convince her purported clients to "pay [Meide] back, in full, within the next 10 days."   See Initial Complaint ¶ 86; see Second Amended Complaint ¶ 112.   The Anthonys argue that this email "conclusively shows that the purported claims [Meide] attempted to raise and maintain against the Anthony Defendants were to extort Ms. Anthony to try to effectuate a quick settlement."

<u>See</u> Anthony Sanctions Motion at 8.   As with the other Defendants, the Anthonys also assert that Meide's belated attempt to correct the standing issue demonstrates that he "elected to wholly ignore his duty under Rule 11 to conduct a diligent investigation and advance only proper facts in support of his allegations."   <u>Id.</u>

As to Meide's counsel, William McLean, the Anthonys argue that McLean also "failed to make any reasonable investigation into the factual basis—or lack thereof—of Plaintiff's claims, and opted to repeat the same legally and factually deficient claims being asserted by his client for the better part of two years." <u>See</u> <u>id.</u> at 11.   In seeking to substitute JIC as the plaintiff and file a Third Amended Complaint, the Anthonys contend that McLean "needlessly multiplied these proceedings and created additional unnecessary litigation for the defendants."   <u>Id.</u>

In Response, Meide makes no attempt to defend his decision to sue Michael Anthony in the Initial Complaint.   Nor does Meide defend the claims he asserted against Laura Anthony in the Initial, First Amended, or Second Amended Complaints.   Instead, Meide relies on the allegations in the Proposed Third Amended Complaint to assert that he had a sufficient basis for suing Laura Anthony because she allegedly "presided over a transaction that was legally void and not in the best interest" of Pulse or its shareholders.   <u>See</u> Response to Anthony Sanctions Motion at 4.   Meide discusses at length a

purportedly fraudulent transaction related to Evolution AI's takeover of Pulse and the creation of Pulse Acquisition Corporation (PAC) to facilitate a share exchange.   According to Meide, the claims he asserted against Laura Anthony in the Proposed Third Amended Complaint, were "made with the understanding she participated in the acquisition of shares and provided at a minimum, legal advice to [Pulse]."   <u>Id.</u> at 11.   But Meide does not actually identify any wrongful conduct committed by Anthony and asserts only that "[t]he extent of Ms. Anthony's obligations to PEC during the PAC acquisition process was an issue for discovery."   <u>Id.</u> at 7, 10.   Meide does not attempt to defend the pre-suit email he sent to the Anthonys, nor does he affirmatively state that he did not initiate this case with an improper purpose as the Anthonys contend.   As he did with the other Defendants, Meide repeats the argument that because he had a sufficient factual and legal basis to assert his claims, "any harm claimed by the several defendants is ancillary and not the result of intent."   <u>Id.</u> at 11.

## III.   Applicable Law

The PSLRA mandates that:

> In any private action arising under this chapter, upon final adjudication of the action, the court <u>shall</u> include in the record <u>specific findings</u> regarding compliance by <u>each party</u> and <u>each attorney</u> representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u-4(c)(1) (emphasis added).  Moreover, "[i]f the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion, the court <u>shall</u> impose sanctions . . . ."  15 U.S.C. § 78u-4(c)(2) (emphasis added).  Accordingly, "the PSLRA's provisions eliminate a district court's discretion on two fronts: (1) in choosing whether to conduct the Rule 11(b) inquiry and (2) in determining whether to impose sanctions following a finding of a Rule 11(b) violation."  <u>See</u> <u>Thompson v. RelationServe Media, Inc.</u>, 610 F.3d 628, 636 (11th Cir. 2010); <u>see</u> <u>also</u> <u>Ehlert v. Singer</u>, 245 F.3d 1313, 1320 (11th Cir. 2001) (remanding case where district court failed to make the Rule 11 findings expressly required by the PSLRA).

"Although the PSLRA forces a district court to conduct the Rule 11 inquiry, it does not alter the ordinary Rule 11 analysis."  <u>See</u> <u>Thompson</u>, 610 F.3d at 664 (Tjoflat, J., concurring in part and dissenting in part).  Generally,

> Rule 11 sanctions are proper: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose."

<u>Jones v. Int'l Riding Helmets, Ltd.</u>, 49 F.3d 692, 694 (11th Cir. 1995) (quoting <u>Souran v. Travelers Ins. Co.</u>, 982 F.2d 1497, 1506 (11th Cir. 1993)); <u>see</u> <u>also</u> Rule 11(b).  To determine whether Rule 11 sanctions are appropriate, a court

must first determine whether the party's claims are "objectively frivolous" in view of the facts or law.   See Jones, 49 F.3d at 695.   If they are, then the Court considers "whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry."   See id.

Significantly, Rule 11 "incorporates an objective standard."   See Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987).   Thus, the Court must determine "'whether a reasonable [litigant] in like circumstances could believe his actions were factually and legally justified.'"   See McDonald v. Emory Healthcare Eye Ctr., 391 F. App'x 851, 852-53 (11th Cir. 2010) (quoting Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003)).   Thus, "[s]anctions may be appropriate when the plain language of an applicable statute and the case law preclude relief."   Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998) internal footnotes omitted).   Likewise, "sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts . . . .'"   Id.   However, sanctions are not appropriate when "the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law."   See id. (internal footnotes omitted).   As relevant to this case, Rule 11 does apply to pro se plaintiffs, "but the court must take into account the plaintiff's pro se status when determining whether the

filing was reasonable."   See Thomas v. Evans, 880 F.2d 1235, 1240 (11th Cir. 1989).

## IV.   Discussion

### A. The Anthonys

Upon review of the record in this case, the Court finds that Meide lacked an objectively reasonable factual or legal basis for prosecuting his claims against Laura and Michael Anthony.   The Court is also convinced that Meide prosecuted this action against the Anthonys for an improper purpose.   The claims asserted against Laura and Michael Anthony in the Initial Complaint were objectively frivolous as Meide made no attempt to set forth any relevant factual allegations regarding these two Defendants.   Notably, in Counts Two and Four through Seven, Meide generally recited the elements of each claim.[6] Yet, despite demonstrating his general awareness of the legal parameters of these causes of action, Meide failed to include factual allegations to meet even the most basic elements.   For example, in the Initial Complaint Meide did not present any allegations that Laura Anthony or her spouse made a representation to Meide, much less a false and material one, that could support the state or federal fraud claims set forth in Counts Two and Six.   As to Counts

---

[6] Counts One and Three were patently frivolous for the reasons stated at the July 24, 2019 Hearing.   Meide has no right to convene a grand jury to criminally investigate the Anthonys (Count One), and the Supreme Court foreclosed Meide's claim of aiding and abetting securities fraud (Count Three) in a decision issued over twenty years before Meide filed this lawsuit.   See Tr. at 11-15.

Four and Five, for breach of contract and breach of fiduciary duty, Meide did not identify any contractual or fiduciary relationship between the Anthonys and Meide as plainly necessary to support such claims.   In Count Seven, Meide asserted a civil conspiracy claim against all Defendants, including the Anthonys, but made no attempt to allege, even in a conclusory fashion, the existence of an agreement between the Anthonys and other Defendants to do an unlawful act.   Moreover, when the Anthonys notified Meide of these obvious deficiencies in his claims against them and informed him of their intent to seek sanctions on this basis, he made no attempt to withdraw or amend his pleadings.

The only significant allegation regarding the Anthonys in the Initial Complaint was Meide's description of his pre-suit email exchange with Laura Anthony in which he threatened to include her and her husband in this lawsuit if she failed to convince her purported clients to meet Meide's demands.   See Initial Complaint ¶¶ 85-87.   Not only was this email exchange entirely irrelevant as a basis for the claims asserted, it also plainly demonstrates that Meide's purpose in naming the Anthonys was to use them to put pressure on the other Defendants and hopefully force a settlement.   See Pelletier v. Zweifel, 921 F.2d 1465, 1519-20 (11th Cir. 1991) abrogated on other grounds in Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639 (2008).   Indeed, Meide's decision to include Laura Anthony's husband in the lawsuit, a person who had

no apparent connection to Pulse, Evolution AI, or the events of this lawsuit, was plainly vindictive and constitutes "strong evidence" that Meide was "conducting scorched earth litigation." See Thompson, 610 F.3d at 695 (Tjoflat, J. dissenting) ("Suing individual defendants without any legal or evidentiary basis is strong evidence that . . . plaintiffs were conducting scorched earth litigation."). Thus, on this record, the Court readily concludes that a reasonable pro se litigant would have known that the claims against the Anthonys were frivolous, and that from the outset, Meide named these individuals as Defendants for the improper purpose of harassment.

As to the Second Amended Complaint,[7] although Meide dropped his claims against Michael Anthony, he continued to assert claims of securities fraud, common law fraud, civil conspiracy, breach of duty of good faith and fair dealing, and breach of fiduciary duty against Laura Anthony. See generally Second Amended Complaint. However, despite the Court's prior rulings and instructions regarding the pleading standards that applied to his fraud claims and having been cautioned by the Court regarding the potential for sanctions,

---

[7] The First and Second Amended Complaints are substantively the same. Meide drafted the First Amended Complaint in essay format and without identifying which facts support which claims. See First Amended Complaint; see also Order (Doc. 86) at 3. When the Court struck the First Amended Complaint for failure to comply with Rules 8 and 10, Meide filed the Second Amended Complaint using separate paragraphs. As the allegations are substantively the same, the Court need not address the First Amended Complaint separately.

particularly as to the Anthonys, Meide provided only marginal additional support for his claims against Laura Anthony.   Meide alleged that Anthony as the "Compliance Officer for Pulse appears to be the enabler of the scam," and quoted an internet post, whose author and source was unidentified, that criticized Anthony for providing an "attorney letter" for Pulse.   <u>See</u> Second Amended Complaint ¶¶ 108-110, Ex. C.   According to this internet post, Anthony wrote an "attorney letter for [Pulse] vouching for the information in the OTC [over the counter] disclosures (including all the missing disclosures involving share issuances and lawsuits, misleading information about current business operations, and the accounting errors)" which gave "a false aura of legitimacy to [a] corrupt publicly traded company."   <u>Id.</u> ¶ 110, Ex. C.

However, Meide did not include any specific allegations describing what was false in this letter, the basis for his contention that Anthony knew it was false, or how he relied on or was harmed by the purportedly false statements in the letter.   Indeed, the attorney letter that he attached to the Second Amended Complaint is dated February 1, 2018.   <u>See</u> Second Amended Complaint ¶ 108, Ex. C.   But Meide purchased his shares in Pulse on July 18, 2014, and July 30, 2015, <u>see</u> Second Amended Complaint ¶¶ 42, 71, and he entered the share exchange agreement and securities purchase agreement regarding Evolution AI in January of 2018.   <u>See</u> Declaration of John Textor in Support of Defendants Pulse Evolution Corporation, Evolution AI Corporation, John

Textor, Jordan Fiksenbaum and Frank Patterson's Motion to Dismiss Plaintiff's Complaint (Doc. 23-1) ¶¶ 4-5, Exs. B-C.   Meide did not allege or explain how he could have relied on, or been damaged by, a letter Anthony wrote <u>after</u> he had already invested in Pulse and Evolution AI.   Thus, this letter did nothing to remedy the deficiencies identified in the Initial Complaint.   Moreover, Meide reasserted his securities fraud claim against Laura Anthony in his own name, without making any attempt to address JIC's status as the actual purchaser of the securities and Meide's apparent lack of standing to bring that claim as discussed at the Hearing.   Thus, Meide's claims against Laura Anthony in the Second Amended Complaint remained factually and legally frivolous, and Meide's decision to reassert those claims, in the face of the Court's warnings and pending sanctions motion, demonstrates his improper purpose.   <u>See Thompson</u>, 610 F.3d at 665 (Tjoflat, J., dissenting) (explaining that improper purpose is "often inferred from circumstantial evidence," such as "'excessive persistence in pursing a claim or defense in the face of repeated adverse rulings.'" (quoting <u>Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH</u>, 141 F.3d 1434, 1448 (11th Cir. 1998))).

Notably, in his Response to the Renewed Anthony Sanctions Motion, Meide does not specifically or directly deny that he filed this lawsuit with an improper purpose as the Anthonys contend.   Instead, Meide argues that because he raised "[a] good-faith claim of fraud" this "negates a claim of

improper purpose."   <u>See</u> Response to Renewed Anthony Sanctions Motion at 11.   But, as explained above, Meide's claims against the Anthonys were frivolous, and an objectively reasonable litigant would have known as much, especially after receipt of the Anthonys' motions and having heard the Court's admonitions at the Hearing.   Tellingly, Meide does not attempt to defend or support the federal securities fraud or other state law claims he brought against the Anthonys in the Initial Complaint or Second Amended Complaint. Instead, Meide relies on the Proposed Third Amended Complaint to contend that he had a good-faith basis for suing Laura Anthony.   <u>See</u> Response to Renewed Anthony Sanctions Motion at 3-7, 10.   However, the claims Meide asserted against Laura Anthony in the Proposed Third Amended Complaint are different than those set forth in the Initial and Second Amended Complaints, such that Meide's reliance on his proposed amended pleading provides no support for the securities fraud and other claims that he raised in his earlier pleadings.   Moreover, the PSLRA requires the Court to scrutinize each of the pleadings Meide filed in this action, such that "one nonfrivolous complaint does not immunize the earlier filing of frivolous complaints."   <u>See</u> <u>Thompson</u>, 610 F.3d at 664 (Tjoflat, J., dissenting).   Regardless, the Proposed Third Amended Complaint still failed to set forth an objectively reasonable factual or legal basis

for suing Laura Anthony.[8]   On this record, and absent any justification from

Meide for his decision to assert the claims against the Anthonys in the Initial,

First Amended and Second Amended Complaints, the Court finds that Meide

violated his obligations under Rule 11(b).

_____

[8] In the Proposed Third Amended Complaint, Meide alleged that Anthony aided and abetted fraud by "repeatedly approving Textor's directorship" despite knowledge of his "fraudulent scheme," and by "failing to remove" Textor from his position despite knowledge that Textor had violated his fiduciary duty to Pulse.  See Proposed Third Amended Complaint ¶ 109.  The Court questions how Laura Anthony, as counsel for Pulse, had any role in "approv[ing]" Textor's directorship, much less the ability to "remove" him as a director.  But regardless, Meide made no attempt to allege facts demonstrating that Anthony had actual knowledge of any underlying fraud as necessary to state a claim for aiding and abetting fraud.  Instead, the sole factual allegation as to Anthony in the Proposed Third Amended Complaint is that "[u]pon information and belief, Laura Anthony prepared the exchange documents despite knowing, or having should have known [sic] that the Share Exchange was not in the best interest of [Pulse] and constituted the theft of [Pulse] technology valued at more than $140 million."  See id. ¶ 89 (emphasis added).  Meide provided no factual support for his contention that Anthony knew about Textor's alleged wrongdoing, and under Florida law "should have known" is plainly not enough to establish a claim for aiding and abetting fraud. See Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1343-44 (S.D. Fla. 2018) ("Florida law requires that a defendant have actual 'knowledge of the underlying fraud or breach of fiduciary duty,' not merely that certain 'red flags' indicate a defendant 'should have known' of the breach." (quoting Lamm v. State Street Bank & Trust, 749 F.3d 938, 950 (11th Cir. 2014))); Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (citing Aetna Cas. & Sur. Co. v. Leahey Constr. Co., Inc., 219 F.3d 519, 536 (6th Cir. 2000) ("[E]vidence establishing negligence, i.e., that a [secondary wrongdoer] 'should have known,' will not suffice.")).

Likewise, Meide asserted a claim under the Florida Deceptive and Unfair Trade Practices Act against Anthony based on an allegation that she "fraudulently induced [Meide] into investing in and purchasing securities from [Pulse] by disseminating materially false and misleading statements."  See id. ¶ 118.  But again, Meide did not allege that Anthony made any false or misleading statements, much less that Meide relied on those statements in deciding to invest.  In his Response to the Renewed Anthony Sanctions Motion, Meide explains that his claims against Anthony were "made with the understanding she participated in the acquisition of shares and provided at a minimum, legal advice to [Pulse]."  See Response to Renewed Anthony Sanctions Motion at 11.  Meide states that "[t]he extent of Defendant Laura Anthony's involvement . . . and her obligations to [Pulse] were . . . to be fleshed out in discovery."  See id. at 10.  Rather than support his decision to sue Anthony, these representations demonstrate that Meide still lacked any reasonable factual or legal basis for accusing Anthony of fraud, and instead sought to conduct an impermissible fishing expedition through discovery in the hopes of uncovering wrongdoing.

The Anthonys also seek sanctions against Meide's counsel, McLean, for his role in "needlessly multipl[ying] these proceedings" by filing the Motion to Amend and Motion to Substitute.   See Renewed Anthony Sanctions Motion at 13.   This request is well-taken.   As stated in the Order, McLean filed these Motions without offering any factual or legal basis why amendment and substitution would be appropriate at that late stage in the proceedings.   The case had been pending nearly two years at the time of McLean's appearance, Meide had already amended his pleadings twice, and the deadline for filing a motion to amend had long since expired.   Almost a year had passed since the Court instructed Meide on the applicable pleading standards, urged him to seek counsel, and cautioned him that Defendants were likely correct in their assertion that Meide was not the proper plaintiff to bring this action.   Yet, in seeking leave to substitute a new plaintiff and amend the pleadings for the third time, McLean made no attempt to present any facts supporting consideration of such a tardy request.

Noticeably missing from the Motions to Amend and Substitute were any representations regarding when Meide first obtained McLean as counsel in this action or describing whether Meide acted with due diligence in seeking legal counsel.   Even a cursory review of the record in this case and minimal legal research would have revealed the need to come forward with some justification for restarting the case after two years of litigation.   Given the complete lack of

citation to any supporting legal authority or discussion of facts relevant to whether leave to amend was appropriate, the Court finds that McLean failed to conduct a reasonable investigation prior to filing the Motions.   In his Response to the Renewed Anthony Sanctions Motion, McLean insists that the claims asserted in the Proposed Third Amended Complaint were legitimate.   As noted above, McLean is wrong on this point, see supra note 8, but regardless, McLean fails to address the more salient point of why he believed it was factually or legally appropriate to seek leave to amend and substitute at that time.   Given the record in the case, McLean, as a member of the Bar, should have been aware that these Motions, devoid of any legal or factual support, were frivolous.   As such, the Court finds that McLean's decision to file these Motions violated Rule 11(b)(2) and (3).[9]

**B. Remaining Defendants**[10]

As to the Pulse and Centineo Defendants, the Court begins its analysis with the securities fraud claim set forth in the Initial Complaint.   While the allegations are weak, particularly as to Tejeda, Natale, Agnes King, and

---

[9] Although McLean's decision to appear in this case under the circumstances gives the Court some pause, the Court is not convinced that McLean filed the Motions for an improper purpose.

[10] Unlike the Anthonys, the Pulse and Centineo Defendants move for sanctions solely pursuant to the PSLRA and do not assert that sanctions are warranted against McLean.   As such, the Court addresses only whether Meide violated Rule 11(b) in filing the securities fraud claims against these Defendants in the Initial, First Amended and Second Amended Complaints.

Fiksenbaum, the Initial Complaint does contain at least some allegations that these individuals made concerning representations, bold promises, and extravagant claims to induce Meide to invest.   While Meide was unable to show that these representations were false when made, much less that Defendants had the requisite scienter, given his pro se status, the Court finds that a reasonable litigant in like circumstances could have believed that his actions were factually and legally justified.   In their Motion, the Pulse Defendants argue that Meide knew he had no factual or legal basis to assert the securities fraud claim in the Initial Complaint because Meide, having signed the purchase agreements as the authorized signatory for JIC, knew that JIC, not Meide, was the actual purchaser of the securities at issue.   See Pulse Sanctions Motion at 7.   However, the Court is not convinced that a reasonable pro se litigant would understand the significance of this distinction given that the purportedly misleading representations were made to Meide, he made the decision to invest, and he appears to be the sole beneficiary of the trust that owns JIC.   See Affidavit of Scott Meide (Doc. 119-1) ¶¶ 3-4.   Thus, the Court is satisfied that an objectively reasonable pro se litigant could have believed he was legally and factually justified in asserting the securities fraud claims raised in the Initial Complaint.

However, Meide's decision to persist with his securities fraud claims after the July 24, 2019 Hearing was not objectively reasonable and the Court is

convinced Meide prolonged this litigation for the improper purpose of harassing Defendants into a settlement.   Most significantly, Meide's decision to file the First and Second Amended Complaints, in his own name, after the Court cautioned him that he did not appear to be the correct plaintiff to pursue this action evidences a "deliberate indifference to obvious facts."   See Baker, 158 F.3d at 524.   Having been informed that the distinction between Meide and JIC was legally important, it is telling that in his amended pleadings Meide still asserted, falsely, that he purchased the securities without mentioning JIC at all.   Meide did not offer any reason why he still believed that he had standing to pursue JIC's securities fraud claim, indicating that Meide was less concerned with whether he could ultimately prevail on the merits in this action, than he was with prolonging the litigation as a means of harassing Defendants. Thus, under the circumstances, the Court finds that Meide's amended securities fraud claim was not only frivolous but brought with an improper purpose in violation of Rule 11(b).

The Court finds additional support for its determination that Meide prosecuted this action for an improper purpose given his responses to Defendants' motions to dismiss the Second Amended Complaint.   See Pelletier, 921 F.2d at 1517-19 (finding the manner in which a party briefed his appeal indicative of an improper purpose).   Although Meide had previously heard from the Court on the heightened pleading requirements for securities fraud,

after Defendants moved to dismiss on this basis, Meide made no attempt in his responses to identify which allegations in the Second Amended Complaint he believed were sufficient to satisfy those standards.   Instead, he quibbled with Defendants' description of those standards, appeared to deny that it was necessary to meet those standards, and filled his response with irrelevant literary quotations, sarcasm, and rhetorical questions.   While the Court does not expect a pro se litigant to file a brief equal to that of a licensed attorney, Meide's tone and manner of responding, combined with his failure to acknowledge legal principles on which the Court had previously instructed him, indicate that these briefs were merely additional "tools of harassment" to prolong this case.[11]   See id. at 1519.   Based on the foregoing, the Court finds that Meide violated Rule 11(b) when he filed the First and Second Amended Complaints.

---

[11] Although the fact that Meide included Textor's wife and six-year-old son in a California lawsuit against Textor and others regarding a different investment gone wrong is concerning, Meide's improper purpose is evident from the record in this lawsuit without requiring the Court to wade into the merits of that case.   Defendants' evidence of internet postings about Meide's claims also strongly indicate that he is using this lawsuit to harass and disparage Defendants.   Although the evidence actually connecting Meide to those anonymous posts is not definitive, it is telling that Meide makes no effort to respond to this evidence or deny his involvement.   Regardless, even without this evidence, for the reasons set forth above, the record demonstrates that Meide pursued the securities fraud claims to harass Defendants.

## V.    Conclusion[12]

The Court does not undertake this sanctions review lightly, especially given Meide's status throughout most of this case as a pro se litigant. However, "pro se filings do not serve as an 'impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'"   See Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (quoting Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986)).   For the reasons stated above, the Court finds that Meide violated Rule 11(b) as to his claims against the Anthonys in the Initial, First Amended and Second Amended Complaints, and as to his securities fraud claims against the Pulse and Centineo Defendants in the First Amended and Second Amended Complaints.   As such, pursuant to 15 U.S.C. § 78u-4(c)(2), the Court must impose sanctions and will direct the parties to file supplemental motions addressing the amount of the sanction.   To the extent the Anthonys also request Rule 11 sanctions against McLean based on his conduct in filing the Motion to Amend and Motion to Substitute, this request is

---

[12] The Court acknowledges that the PSLRA requires the Court to make specific findings regarding Defendants' compliance with Rule 11 in filing their dispositive motions as well.   See 15 U.S.C. § 78u-4(c)(1); Thompson, 610 F.3d at 664 (Tjoflat, J., dissenting).   Upon review of the Motions to Dismiss filed in this case, and having ruled in Defendants' favor on those Motions, the Court is fully satisfied that Defendants and their counsel complied with each requirement of Rule 11 in moving for dismissal of this action.

also due to be granted and the Anthonys should address the appropriate amount of the sanction as to McLean in their supplemental motion.

Accordingly, it is

**ORDERED:**

1. Defendants Centineo, Natale, Agnes King and John King's Motion for Sanctions (Doc. 156); and Pulse Defendants' Motion for Determination of Entitlement to Award of Sanctions and Incorporated Memorandum of Law (Doc. 157) are **GRANTED, in part, and DENIED, in part.**

   A. The Motions are **GRANTED** to the extent the Court finds that these Defendants are entitled to sanctions stemming from the securities fraud claims asserted in the First and Second Amended Complaints.

   B. The Motions are otherwise **DENIED.**

2. Defendants Laura Anthony's and Michael Anthony's Renewed Motion [for] Sanctions and Incorporated Memorandum of Law (Doc. 158) is **GRANTED**.

3. On or before **November 15, 2021**, Defendants shall file supplemental motions in accordance with Local Rule 7.01(c) regarding the appropriate amount of the sanctions under Rule 11 and 15 U.S.C. § 78u-4(c)(3).

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of September, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties