UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT MEIDE,

    Plaintiff,

v.

                                                          Case No. 3:18-cv-01037-MMH-MCR

PULSE EVOLUTION CORPORATION,
JOHN TEXTOR, GREGORY CENTINEO,
JULIE NATALE, DANA TEJEDA, AGNES KING,
JOHN KING, EVOLUTION AI CORPORATION,
JORDAN FIKSENBAUM, LAURA ANTHONY,
MICHAEL POLLACCIA, a/k/a MICHAEL ANTHONY,
and FRANK PATTERSON,

    Defendants.

_____/

**DEFENDANTS LAURA ANTHONY'S AND MICHAEL ANTHONY'S VERIFIED SUPPLEMENTAL MEMORANDUM ON ATTORNEYS' FEES AND COSTS**

Defendants, LAURA ANTHONY and MICHAEL POLLACCIA a/k/a MICHAEL ANTHONY (collectively, the "Defendants"), by and through undersigned counsel and pursuant to *Federal Rule of Civil Procedure* 11, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(c), and this Court's September 29, 2021 Order [DE 164], hereby file this Verified Supplemental Motion on Attorneys' Fees and Costs against Plaintiff SCOTT MEIDE ("Plaintiff") and his counsel William H. McLean, and in support thereof, state as follows:

**I.**    **INTRODUCTION**

Plaintiff initiated this action as a *pro se* litigant who alleged to have lost nearly $750,000 through investments made with the corporate Defendants. Defendant Laura Anthony is a licensed attorney in good standing with the Florida Bar. Before this lawsuit was filed, Plaintiff threatened Laura Anthony that both her and her husband Michael Anthony would be named as

defendants in his complaint if she was not able to convince her purported clients (the other named Defendants) to compensate him for his alleged losses. When Laura Anthony rejected Plaintiff's threats, and accused him of extortion, Plaintiff filed this lawsuit naming Laura Anthony and Michael Anthony as defendants, despite the absence of *any* substantive facts that would support any of the claims made against them. In fact, other than an article Laura Anthony wrote for an on-line publication, about a general securities law topic unrelated to any of the Defendants or the alleged offering, and Michael Anthony's status as Laura Anthony's husband, Plaintiff repeatedly failed to allege a single fact of any kind related to the Anthony Defendants. Throughout the pendency of this matter, Plaintiff was put on repeated notice of the fact that he had no valid claims against the Anthony Defendants and that Plaintiff, individually, had no standing to pursue the claims brought in any event. This notice came in the form of filings on behalf of the various Defendants, along with the Court's own repeated admonitions both in written orders, and on the record at various hearings.

Plaintiff's improper pursuit of the claims raised in this matter, and continued attempts to inappropriately attempt to include the Anthony Defendants in this matter, caused the Anthony Defendants to waste countless hours and expend substantial attorneys' fees and costs in defending an entirely meritless case for **over three years**. *See, e.g.*, Complaint [DE 1] (filed August 27, 2018). As demonstrated by the procedural history and well-established record in this case, Plaintiff's claims were not the result of any investigation whatsoever into Plaintiff's legal rights to recover from the Anthony Defendants—much less the reasonable inquiry required by Rule 11. Had Plaintiff made a reasonable inquiry, as required by Rule 11, prior to his filing of the Complaint [DE 1], Amended Complaint [DE 85], Second Amended Complaint [DE 88], and the various other patently frivolous and nonsensical filings in this matter, it would have been

clear that his claims are barred by existing law and lacked any semblance of factual support. Plaintiff apparently made no such inquiry.

Likewise, even when Plaintiff finally decided to engage counsel to represent his interests in this matter on June 11, 2020, his chosen attorney, Mr. McLean, failed to undertake a reasonable investigation and inquiry into the merit—or lack thereof—of Plaintiff's claims and attempted to advance the same deficient claims against the same parties—including Ms. Anthony. The filings presented by Mr. McLean failed to cure any of the deficiencies set forth in Plaintiff's initial pleadings, and instead attempted to backtrack, contradict his clients' prior contentions regarding standing, and substitute another party in place of Mr. Meide, which attempts were properly rejected by the Court. Given that Plaintiff's claims were rooted in the PSLRA, such failure by Plaintiff and its counsel to meet even the most basic pleading standards requires this Court to impose Rule 11 sanctions against Plaintiff in the amount of reasonable attorneys' fees and costs incurred, as described below. *See* 15 U.S.C. § 78u-4(c)(1).

## II. PROCEDURAL HISTORY

1. Plaintiff initiated this matter on August 27, 2018 by filing a rambling **Verified** Complaint [DE 1] alleging claims against various individuals and entities relating to his purported purchase of certain stock and alleged securities fraud. *Id*.

2. Each of the various Defendants moved to dismiss the Complaint on several grounds including the fact that Plaintiff wholly failed to plead his fraud-based claims with the requisite specificity under Rule 9(b) and the fact that Plaintiff is not the real party in interest and

lacks standing to pursue the claims raised given that the stock at issue was purchased by an entity and not Plaintiff, individually.[1] *See*, *e.g.*, [DE 22, 24, 28, 31].

3. The Court agreed and dismissed the Complaint without prejudice. *See* [DE 76].[2] In reaching its decision, the Court specifically explained to Plaintiff the heightened pleading standards associated with his claims. *See* [DE 77, at pp. 7-11, 15-21].

4. On September 24, 2019, Plaintiff filed his First Amended Complaint [DE 85], which was stricken by the Court *sua sponte* for Plaintiff's failure to comply with the Court's pleading standards. *See* [DE 86]. In the Order, the Court advised Plaintiff that he would receive "one final opportunity" to attempt to state a valid claim. *See id*.

5. On November 26, 2019, Plaintiff filed his Second Amended Complaint [DE 88]. Because Plaintiff's Second Amended Complaint likewise failed to meet the most basic pleading requirements each of the Defendants—including the Ms. Anthony—moved to dismiss the Second Amended Complaint on largely the same bases that the initial Complaint [DE 1] was clearly deficient. *See* [DE 93, 94, 96, 98].

6. During pendency of the motions to dismiss, Plaintiff finally decided to engaged an attorney, who appeared on behalf of Plaintiff on June 11, 2020. *See* [DE 116]. Upon appearance of counsel, Plaintiff attempted to entirely backtrack on his purported "assignment"

---

[1] In recognition of Defendants' arguments regarding standing, Plaintiff filed a "Notice of Assignment" in which Plaintiff attached a document purporting to effectuate an assignment of Plaintiff's entity's rights to pursue the instant claims to Plaintiff. *See* [DE 72-1].

[2] In its Order, the Court also deferred ruling on the Anthony Defendants' initial Rule 11 Motion. *Id*.

argument, which he had maintained for nearly two years, and sought—for the very first time—to substitute his entity, Jacksonville Injury Center, LLC as Plaintiff. *See* [DE 119].[3]

7. Plaintiff's belated attempts to substitute required the Ms. Anthony to expend substantial additional resources to analyze and respond to the same. *See* [DE 134]. As explained in the Ms. Anthony's Opposition [DE 134], the Court agreed that Plaintiff's attempts to substitute in Jacksonville Injury Center were too little, too late, and entered an order accordingly. *See* [DE 141, at pp. 4-10].

8. Finally, after two years of unnecessary litigation over Plaintiff's improper and insufficiently pled claims, the Court entered its Order dismissing the Second Amended Complaint [DE 141].

9. The Court entered an extremely detailed Order of dismissal, detailing the procedural history, Plaintiff's factual allegations, and the various legal deficiencies of Plaintiff's purported claims. *See generally* [DE 141]. This Order, undoubtedly satisfies the requirements of 15 U.S.C. § 78u-4(c) requiring the Court to make "specific findings regarding compliance by [Plaintiff] with each requirement of Rule 11(b)."

10. On September 29, 2021, after over three years of litigation, the Court entered its Order granting Defendants' entitlement to attorneys' fees and costs sanctions. *See* [DE 141]. This Supplemental Motion follows.

### III. FACTUAL BACKGROUND

In these proceedings, Defendants have been represented by the law firm of Zarco Einhorn Salkowski & Brito, P.A. (hereinafter referred to as "ZESB"). Pursuant to Defendants' agreement

---

[3] At the same time, Plaintiff attempted to amend his Complaint, yet again, despite the Court's clear prior warnings that the Second Amended Complaint was Plaintiff's final opportunity to attempt to properly plead his claims. *See* [DE 120]; [DE 86].

with ZESB, Defendants are obligated to remit payment for services rendered by ZESB on an hourly basis, and for costs advanced on Defendants' behalf by ZESB.

Pursuant to M.D. Fla. L.R. 7.3(c), the undersigned counsel for Defendants, Robert F. Salkowski, Esq., has fully reviewed the time records and supporting data and states that this Motion is well grounded in fact and justified. As indicated in the time records, ZESB's attorneys and paralegals have specified in an itemized fashion the amount of time spent each day on this matter. Their timesheets were converted into billing statements, which indicate the attorney or paralegal's initials, hourly rate for conducting the service, the amount of time spent, and the task performed by the attorney or paralegal. The timesheets were prepared on a daily basis, therefore being sufficiently contemporaneous to the events recorded to be reliable. The Declaration of Robert F. Salkowski, attached hereto as **Exhibit "A,"** (hereinafter "Salkowski Decl.") and the exhibits attached thereto, set forth the tasks performed by each attorney and the date and amount of time devoted to the task. ZESB's billing statements, which are attached to the Salkoswki Decl. as Schedule "1," reveal that a total of 62.25 hours have been spent by ZESB's attorneys and paralegals in this matter. *See* Salkowski Decl. at ¶¶5-6.

These hours were spent as follows:

| **Attorney Name:** | **Total Hours:** |
|---|---|
| Robert F. Salkowski | 23.95 |
| Michael D. Braunstein | 38.20 |
| **TOTAL ATTORNEY HOURS:** | **62.15** |

| **Paralegal Name:** | **Total Hours:** |
|---|---|
| Nadia Espinoza | 0.10 |
| **TOTAL PARALEGAL HOURS:** | **0.10** |

-----------------------------------------------------------------

| **TOTAL HOURS:** | **62.25** |
|---|---|

Pursuant to its agreement with Defendants, ZESB charges them a rate of $700 per hour for Robert F. Salkowski; $310 per hour for Michael D. Braunstein; and $125 per hour for Nadia Espinoza. The total fees incurred by ZESB from September 2018 through November 2021 with regards to Defendants' defense against Plaintiffs' claims amounts to $28,229.50. *See* Salkowski Decl. at ¶¶ 9-10.

The total fees are as follows:

**Attorneys:**
23.25 hrs. @ $700 per hr.         $16,275.00
38.90 hrs. @ $310 per hr.         $12,059.00

**Paralegals:**
0.10 hrs. @ $125 per hr.          $12.50

**TOTAL FEES:**                    $28,229.50

This action spanned over three (3) years and, as described herein, included motions, briefings, and preparation for hearings. From September 2018 to November 2021, the time found above was spent on this matter by, including, but not limited to: (1) preparing multiple successful motions to dismiss; (2) preparing a successful motion for sanctions; (3) and preparing for and attending a hearing on the aforementioned motion to dismiss. *Id.* at 7.

Work performed by the attorneys in this matter at ZESB was allocated based upon the tasks and experience. The bulk of the work, as reflected in the hours provided above, was split between attorneys Robert F. Salkowski and Michael D. Braunstein, who prepared the motion and briefs and performed legal research. Partner Robert F. Salkowski edited briefs and attended the hearing on Defendants' Motion to Dismiss. *Id.* at 8.

III.   **MEMORANDUM OF LAW**

Awarded attorneys' fees must be reasonable. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983) ("[t]he most useful starting point for determining the amount of a reasonable

fee is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate.") *See also Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350. In calculating the fees to award the prevailing party, the Court will rely on the "lodestar" method by "multiply[ing] hours reasonably expended by a reasonable hourly rate. [citation omitted] A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See, e.g., Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir. 1993); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (adopted the lodestar method of reasonableness to determine the award for attorneys' fees); *see also Domond v. PeopleNetwork APS*, 750 F. App'x 844, 847 (11th Cir. 2018) (same). The relevant legal community for determining the reasonable hourly rate for attorney's fees is "that of the place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). Evidence supporting the applicant's fee request requires "sufficient particularity so that the district court can asset the time claimed for each activity."); *Norman*, 836 F.2d at 1303. The party pursuing fees must give the Court "'specific and detailed evidence' in an organized fashion." *Machado v. Da Vittorio, LLC*, 2010 WL 2949618, at *1 (S.D. Fla. July 26, 2010) (quoting *Norman*, 836 F.2d at 1303).

When determining Florida reasonable hourly rates, courts may consider particular factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996)

(citing *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). However, the Court's expertise on the issue of attorneys' fees remains and "may consider its own knowledge and experience concerning reasonable and proper fees." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

In Florida, the Court should utilize the criteria found in *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985) to compute an award of attorneys' fees:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Id.* at 1150; *see also FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 807 (S.D. Fla. 1988).

In applying these guidelines in the present matter, the Court should find that the requested attorneys' fees are reasonable.

**A. The Hours Expended By Defendants' Counsel On This Case Are Reasonable.**

"In determining the number of hours reasonably expended, courts must consider whether the work sought to be compensated was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.' " *Knight v. Alabama*, 824 F. Supp. 1022, 1028 (N.D. Ala. 1993); *see also Hensley*, 461 U.S. at 437. Counsel's certification that the work itemized has

in fact been performed is "entitled to considerable weight on the issue of time required . . . ." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). Indeed, the Eleventh Circuit has stated that, "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id*. at 738. In this case, the work sought to be compensated by the Defendants was "useful and of a type ordinarily necessary to secure the final result obtained in the litigation." *Knight*, 824 F. Supp. at 1028. The work in this case was based upon a division in labor within Defendants' Counsel's office and reflects an effort to reduce duplicative time spent on this case by multiple attorneys. Each attorney's work was completed by that attorney and was necessary for the outcome in this case. Defendants should therefore be compensated for all time expended in defense of the litigation of this case. "To be considered the 'prevailing party,' litigants need not obtain favorable resolution of every issue raised nor obtain all the relief they have requested." *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982) (*citing Robinson v. Kimbrough*, 652 F.2d 458, 466-67 (5th Cir.1981); *Knighton v. Watkins*, 616 F.2d 795, 799 (5th Cir.1980)).

Defendants successfully obtained a complete dismissal with prejudice in their favor of all claims raised against them in the litigation by Plaintiff. *See* [DE 141]. Therefore, it is clear in this case that Defendants are the prevailing party and are entitled to full compensation for all time spent on the case. This is especially clear since Defendants filed a Motion to Dismiss and served Plaintiff with a Motion for Sanctions at the outset of this matter identifying the precise issues that Defendants were ultimately successful on. *See* [DE 31; DE 43].

As set forth in the attached Declaration of Robert F. Salkowski, counsel reviewed each and every time entry. All the work undertaken by Defendants' counsel was necessary to obtain the relief requested. Defendants' Counsel prepared and filed several Motions to Dismiss, Motions for Sanctions, and undertook substantial efforts to research the applicable law and prepare for hearings before the Court on the issues raised therein. All of the time expended in the litigation of this case was reasonable and contributed to the overall relief obtained in the Order ultimately dismissing the case as to Defendants. *See* [DE 141].

Attorney Salkowski's Declaration certifies that the rate requested by Defendants' counsel is reasonable and consistent with rates charged for similar services in cases in the Middle District. *See* Salkowski Decl., submitted herewith.

**B. The Hourly Rate and Costs Requested By Defendants' Counsel Are Reasonable.**

"A reasonable hourly rate is the prevailing market rate in a relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *see also Missouri v. Jenkins*, 491 U.S. 274 (1989); *Norman*, 836 F.2d 1292, 1299 (11th Cir. 1988). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299. "The hourly rate must be determined with reference to prevailing market rates in the relevant community for 'lawyers of reasonably comparable skill, experience and reputation.' " *Turner v. Secretary of the Air Force*, 944 F.2d 804, 808 (11th Cir. 1999). Defendants' Counsel's rate in this case is reasonable. *See* Affadavit of W. Braxton Gillam IV, Esq. ("Gillam Aff.") attached hereto as **Exhibit "B."**

The Eleventh Circuit has stated that in assessing a reasonable hourly rate for Defendants' Counsel, the court must evaluate the attorney's "knowledge of trial practice and knowledge of

the substantive law." *Norman*, 836 F.2d at 1301. Defendants' counsel's experience in the field of complex commercial litigation weighs heavily in favor of the requested hourly rates. Indeed, based upon Defendants' Counsel's substantial experience in the area of law, Defendants were able to accomplish a complete dismissal with prejudice of all claims raised against them at a total cost of attorneys' fees of approximately $28,000.00. *See* Gillam Aff., at ¶ 4. Defendants' Counsel's efficiencies based upon their experience, demonstrates the reasonableness of the fees. *See, e.g., Ressler v. Jacobson*, 149 F.R.D. 651, 653 (M.D. Fla. 1992) (considering the efficiencies of counsel as a factor in determining the reasonableness of a fee award in a class action).

In this case, Defendants' counsel has requested an hourly rate of $700.00 for Robert F. Salkowski, Esq., $310.00 for Michael D. Braunstein, Esq., and $125.00 for Ms. Espinoza. The requested rates are reasonable based on the skill level and expertise of the counsel involved in the litigation of this case. The Affidavit of W. Braxton Gillam IV and Declaration of Robert F. Salkowski demonstrates that the rates requested by Defendants' Counsel is reasonable within this jurisdiction. *See* Gillam Aff., at ¶ 6; Salkowski Decl., at ¶ 9.

In addition, this Court should also include time spent by paralegals. *FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 808 (S.D. Fla. 1988) (in setting attorneys' fees, time spent by paralegals can be included); *see also Maltzer v. Provident Life & Accident Ins. Co.*, 843 F. Supp. 692, 695 (M.D. Fla. 1993). ZESB charged Defendants a reasonable hourly rate of $700 for Robert F. Salkowski (senior partner of ZESB and a 1991 law school graduate) and $310 for Michael D. Braunstein (an attorney at ZESB and 2017 law school graduate), with 30 years and 4 years of practice, respectively.

As set forth above, Defendants incurred $28,229.50 in attorney's fees and paralegal fees and $1,098.58 in costs in this case. As demonstrated in Defendants' counsel's time records, the following time was expended following the appearance of Mr. McLean as counsel on behalf of Plaintiff in this matter:

1. Robert F. Salkowski, Esq., 7.25 hours at a rate of $700.00 per hour for a total of $5,075.00;

2. Michael D. Braunstein, Esq., 22.2 hours at a rate of $310.00 per hour for a total of $6,882.00;

3. Nadia Espinosa, 0.1 hours at a rate of $125.00 per hour for a total of $12.50.

Accordingly, Defendants incurred $11,969.50 in attorneys' fees necessitated based upon conduct which occurred following the appearance of counsel on behalf of Plaintiff. Defendants submit that Plaintiff and his counsel William H. McLean, Esq. should be found jointly and severally liable for this portion of the award.

## IV.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court award its attorneys' fees and costs in the amount of $29,328.08, with $11,969.50 of this amount awarded jointly and severally against Plaintiff and his counsel, William H. McLean, Esq.

## V.   CERTIFIED STATEMENT PURSUANT TO M.D. FLA. L.R. 7.1(c)

Pursuant to M.D. Fla. L.R. 7.1(c), Michael D. Braunstein, Esq. certifies that the undersigned met and conferred with William H. McLean, Esq., counsel for Plaintiff, in a good-faith effort to resolve this Motion, and was unable to do so. Defendants understand the total amount of the fees requested to be in dispute.

**WHEREFORE**, Defendants, LAURA ANTHONY and MICHAEL POLLACCIA a/k/a MICHAEL ANTHONY request that this Court enter a final judgment awarding attorneys' fees

and costs in their favor in the amount of $29,328.08, and prejudgment interest, and for such other and further relief as the Court deems proper.

Dated: November 29, 2021        Respectfully submitted,

        **ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
*Counsel for Defendants Laura Anthony and Michael Pollaccia a/k/a Michael Anthony*
One Biscayne Tower
2 South Biscayne Blvd, Suite 3400
Miami, Florida 33131
T: (305) 374-5418
F: (305) 375-5428

By: /s/ *Robert F. Salkowski*
    **ROBERT F. SALKOWSKI**
    Florida Bar No. 903124
    rsalkowski@zarcolaw.com
    **MICHAEL D. BRAUNSTEIN**
    Florida Bar No. 1003845
    mbraunstein@zarcolaw.com

## **VERIFICATION**

I declare under penalty of perjury that the facts stated in this Motion and the exhibits attached hereto are true and correct.

By: /s/   *Robert F. Salkowski*
    **ROBERT F. SALKOWSKI**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 29, 2021, I electronically filed the foregoing Unopposed Motion For Extension of Time with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for the Plaintiff and Defendants in this matter, and to *pro se* Defendant Dana Tejeda via electronic mail (dana.t@icloud.com).

By: /s/ *Robert F. Salkowski*
    **ROBERT F. SALKOWSKI**