UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCOTT MEIDE,

      Plaintiff,

v.                                CASE NO. 3:18-cv-1037-MMH-MCR

PULSE EVOLUTION CORPORATION,
*et al.*,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

    **THIS CAUSE** is before the Court on: (1) Defendants Centineo, Natale,

Agnes King and John King's Supplemental Motion for Amount of Attorneys'

Fees to Be Awarded as Sanctions (the "Centineo Defendants' Motion") (Doc.

171) and Plaintiff's Response in Opposition thereto (Doc. 179); (2) Defendants

Laura Anthony's and Michael Anthony's Verified Supplemental

Memorandum on Attorneys' Fees and Costs (the "Anthonys' Motion") (Doc.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

172) and Plaintiff and Counsel's Response in Opposition thereto (Doc. 181); and (3) Pulse Defendants' Supplemental Motion as to Amount of Attorneys' Fees and Incorporated Memorandum of Law (the "Pulse Defendants' Motion") (Doc. 174) and Plaintiff's Response in Opposition thereto (Doc. 180).   For the reasons stated herein, the undersigned recommends that the Motions be **GRANTED to the extent stated herein**.

## I.    Introduction

The relevant procedural history of this case was included in the Court's Orders, dated September 4, 2020 and September 29, 2021 Order, and will not be repeated here.   (*See* Docs. 141, 164.)   In the September 4, 2020 Order, the Court granted Defendants' motions to dismiss to the extent it dismissed Plaintiff's securities fraud claim under the Private Securities Litigation Reform Act ("PSLRA") (Count I of Plaintiff's Second Amended Complaint) with prejudice and the remaining state law claims (Counts II-VI of the Second Amended Complaint) without prejudice to refiling in the appropriate state court.   (Doc. 141.)   In the same Order, the Court directed the Clerk of Court to enter judgment in favor of Defendants and against Plaintiff on Count I, while reserving jurisdiction to determine the issue of sanctions under the PSLRA.   (*Id.*)   On September 8, 2020, the Clerk of Court entered Judgment in favor of Defendants Pulse Evolution Corporation, John Textor, Gregory Centineo, Julie Natale, Dana Tejeda, Agnes King, John King,

Evolution AI Corporation, Jordan Fiksenbaum, Laura Anthony, and Frank Patterson, and against Plaintiff Scott Meide on Count I of the Second Amended Complaint.   (Doc. 142.)

Before deciding the issue of sanctions, the Court provided the parties with an opportunity to mediate that issue.   (*See* Doc. 141.)   After the parties were unable to resolve it at mediation, the Court set a briefing schedule and, on September 29, 2021, it ruled on Defendants' motions for sanctions.   (*See* Docs. 146, 147, 164.)   In the September 29, 2021 Order, the Court granted the Anthonys' renewed motion for sanctions[2] (Doc. 158), and granted in part the remaining Defendants' motions for sanctions (Docs. 156 & 157) to the extent the Court found that these Defendants were entitled to sanctions stemming from the securities fraud claims asserted in the First and Second Amended Complaints.   (*See* Doc. 164.)

First, the Court found that Plaintiff violated his obligations under Rule 11(b), Fed.R.Civ.P., for asserting claims against the Anthonys in the Initial, First Amended, and Second Amended Complaints.[3]   (Doc. 164 at 30.)

---

[2] The Anthonys filed an initial motion for sanctions (Doc. 43) under Rule 11, Fed.R.Civ.P., based on the Initial Complaint on November 16, 2018.   On July 24, 2019, the Court deferred ruling on the initial motion for sanctions pending the filing of an amended complaint.   (*See* Doc. 76.)

[3] Because the First and Second Amended Complaints were substantively the same, the Court did not address the First Amended Complaint separately.   (*See* Doc. 164 at 26 n.7.)

3

Specifically, the Court found that Plaintiff "lacked an objectively reasonable factual or legal basis for prosecuting his claims against Laura and Michael Anthony" and he "prosecuted this action against the Antonys for an improper purpose," *i.e.*, harassment.   (*Id.* at 24, 26.)   The Court also stated:

> Meide's claims against the Anthonys were frivolous, and an objectively reasonable litigant would have known as much, especially after receipt of the Anthonys' motions and having heard the Court's admonitions at the Hearing.   Tellingly, Meide does not attempt to defend or support the federal securities fraud or other state law claims he brought against the Anthonys in the Initial Complaint or Second Amended Complaint.   Instead, Meide relies on the Proposed Third Amended Complaint to contend that he had a good-faith basis for suing Laura Anthony. However, the claims Meide asserted against Laura Anthony in the Proposed Third Amended Complaint are different than those set forth in the Initial and Second Amended Complaint, such that Meide's reliance on his proposed amended pleading provides no support for the securities fraud and other claims that he raised in his earlier pleadings.   . . .   Regardless, the Proposed Third Amended Complaint still failed to set forth an objectively reasonable factual or legal basis for suing Laura Anthony.

(*Id.* at 29-30 (internal citations omitted).)

As to the Anthonys' request for sanctions against Plaintiff's counsel, William H. McLean, for his role in "needlessly multipl[ying] these proceedings" by filing the Motion to Amend and the Motion to Substitute, the Court stated that "McLean filed these Motions without offering <u>any</u> factual or legal basis why amendment and substitution would be appropriate at that late stage in the proceedings."   (*Id.* at 31 (emphasis in original).)   The Court concluded: "Given the record in the case, McLean, as a member of the Bar,

4

should have been aware that these Motions, devoid of <u>any</u> legal or factual support, were frivolous.   As such, the Court finds that McLean's decision to file these Motions violated Rule 11(b)(2) and (3)."   (*Id.* at 32 (emphasis in original).)

The Court then addressed the Pulse Defendants' and the Centineo Defendants' request for sanctions solely pursuant to the PSLRA, because these Defendants did not seek sanctions against McLean.   (*Id.* at 32 & n.10.) As to these Defendants, the question before the Court was whether Meide violated Rule 11(b) in filing the securities fraud claims in the Initial, First Amended, and Second Amended Complaints.   (*Id.*)   The Court made the following pertinent findings:

> [T]he Court is satisfied that an objectively reasonable *pro se* litigant could have believed he was legally and factually justified in asserting the securities fraud claims raised in the Initial Complaint.
>
> However, Meide's decision to persist with his securities fraud claims after the July 24, 2019 Hearing was not objectively reasonable and the Court is convinced Meide prolonged this litigation for the improper purpose of harassing Defendants into a settlement.   Most significantly, Meide's decision to file the First and Second Amended Complaints, in his own name, after the Court cautioned him that he did not appear to be the correct plaintiff to pursue this action evidences a "deliberate indifference to obvious facts."   Having been informed that the distinction between Meide and JIC was legally important, it is telling that in his amended pleadings Meide still asserted, falsely, that he purchased the securities without mentioning JIC at all.  . . . Thus, under the circumstances, the Court finds that Meide's amended securities fraud claim was not only frivolous but

brought with an improper purpose in violation of Rule 11(b).

The Court finds additional support for its determination that Meide prosecuted this action for an improper purpose given his responses to Defendants' motions to dismiss the Second Amended Complaint.   Although Meide had previously heard from the Court on the heightened pleading requirements for securities fraud, after Defendants moved to dismiss on this basis, Meide made no attempt in his responses to identify which allegations in the Second Amended Complaint he believed were sufficient to satisfy those standards.  . . .   While the Court does not expect a *pro se* litigant to file a brief equal to that of a licensed attorney, Meide's tone and manner of responding, combined with his failure to acknowledge legal principles on which the Court had previously instructed him, indicate that these briefs were merely additional "tools of harassment" to prolong this case.   Based on the foregoing, the Court finds that Meide violated Rule 11(b) when he filed the First and Second Amended Complaints.

(*Id.* at 33-35 (internal citations and footnote omitted).)

In summary, the Court stated:

[T]he Court finds that Meide violated Rule 11(b) as to his claims against the Anthonys in the Initial, First Amended and Second Amended Complaints, and as to his securities fraud claims against the Pulse and Centineo Defendants in the First Amended and Second Amended Complaints.   As such, pursuant to 15 U.S.C. § 78u-4(c)(2), the Court must impose sanctions and will direct the parties to file supplemental motions addressing the amount of the sanction.   To the extent the Anthonys also request Rule 11 sanctions against McLean based on his conduct in filing the Motion to Amend and Motion to Substitute, this request is also due to be granted and the Anthonys should address the appropriate amount of the sanction as to McLean in their supplemental motion.

(*Id.* at 36-37.)[4]

Pursuant to the Court's September 29, 2021 Order, Defendants filed their present supplemental Motions in accordance with Local Rule 7.01(c) regarding the appropriate amount of sanctions under Rule 11 and 15 U.S.C. § 78u-4(c)(3).   (Docs. 171, 172, 174.)   Plaintiff responded to each Motion and the matter is now ripe for resolution.   (*See* Docs. 179, 180, 181.)

## II.   Standard

Regarding the amount of fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."   *Id.*   Reasonable hours are those that would be reasonable to bill to a client and that are not "excessive, redundant or otherwise unnecessary."   *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable

---

[4] In addition, the Court was "fully satisfied that Defendants and their counsel complied with each requirement of Rule 11 in moving for dismissal of this action."   (Doc. 164 at 36 n.12.)

skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303.

The court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* In determining the reasonableness of the hourly rate, the court may also consider the twelve *Johnson* factors.[5] *Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (per curiam). "There is no precise rule or formula for making these determinations." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 164 (11th Cir. 2008) (per curiam) (citing *Hensley*, 461 U.S. at 436-37).

---

[5] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

### III.   Analysis

### A.   The Anthonys' Motion

The Anthonys seek reasonable attorneys' fees and costs as sanction against Plaintiff and his counsel McLean,[6] pursuant to Rule 11, Fed.R.Civ.P.; 15 U.S.C. § 78u-4(c); and the Court's September 29, 2021 Order.[7]   (*See* Doc. 172.)   In the Motion, the Anthonys argue that they "are the prevailing party and are entitled to full compensation for all time spent on the case," because they "successfully obtained a complete dismissal with prejudice in their favor of all claims raised against them in the litigation by Plaintiff."   (*Id.* at 10.) They also argue that the work expended "was necessary for the outcome in this case," it "was based upon a division [of] labor within Defendants' Counsel's office," and an effort was made "to reduce duplicative time spent on this case by multiple attorneys."   (*Id.*)   Further, Defendants argue that counsel's "efficiencies based upon their experience" demonstrate the reasonableness of their fee.   (*Id.* at 12.)

---

[6] The Anthonys submit that Plaintiff and McLean should be found jointly and severally liable for the attorneys' fees in the amount of $12,669.50, which were incurred after McLean's appearance on June 11, 2020.   (Doc. 172 at 13; Doc. 172-1 (listing the hours actually expended after McLean's appearance).)

[7] The Anthonys also seek prejudgment interest, but do not state the amount, the rate, or the legal basis therefor.   (*See* Doc. 172 at 14.)   Accordingly, the undersigned will recommend that the request for prejudgment interest be denied without prejudice.

The Anthonys seek attorneys' fees of $28,229.50 (including $12,657.00 incurred after McLean's appearance),[8] and costs of $1,098.58[9] expended on this case from September 2018 through November 2021, as follows:

| Name | Experience | Time | Hourly Rate | Total: |
|------|-----------|------|-------------|--------|
| Attorney Robert F. Salkowski | 1991 law school graduate | 22.95 (8.25 after McLean's appearance) | $700.00 | $16,065.00 ($5,775.00 after McLean's appearance) |
| Attorney Michael D. Braunstein | 2017 law school graduate | 39.20 (22.20 after McLean's appearance) | $310.00 | $12,152.00 ($6,882.00 after McLean's appearance) |
| Paralegal Nadia Espinoza | | 0.10 (all time expended after McLean's appearance) | $125.00 | $12.50 |
| Total: | | 62.25 | | $28,229.50 |

In support of the requested hours and hourly rates, Defendants submit: (1) their invoices, indicating the timekeepers' initials, their hours and hourly rates, the date, and description of the work; (2) the Declaration of Robert F.

---

[8] In light of the discrepancies in the number of hours listed in different parts of the Motion and in Mr. Salkowski's Declaration, the Court uses the hours listed in the invoices to calculate the total fee requested.

[9] While the Motion does not state what is included in the total amount of requested costs, the billing records attached to the Motion reflect the following breakdown: $600.00 for the mediator's fee; $297.60 for in-house photocopies; and $200.98 for Federal Express charges.   (Doc. 172-1.)

Salkowski, a senior partner with Zarco Einhorn Salkowski & Brito, P.A.

("ZESB"), counsel for the Anthonys; and (3) the Affidavit as to Reasonable

Attorneys' Fees by W. Braxton Gillam, IV, an attorney with Milam Howard

Nicandri & Gillam, P.A.   (Doc. 172-1; Doc. 172-2.)

Mr. Salkowski's Declaration provides in relevant part:

> This action spanned over three (3) years and, as described herein, included motions, briefings, and preparation for hearings. From September 2018 to November 2021, the time found above was spent on this matter by, including, but not limited to: (1) preparing multiple successful motions to dismiss; (2) preparing a successful motion for sanctions; (3) and preparing for and attending a hearing on the aforementioned motion to dismiss.

> Work performed by the attorneys in this matter at ZESB was allocated based upon the tasks and experience.   The bulk of the work, as reflected in the hours provided above, was split between attorneys Robert F. Salkowski and Michael D. Braunstein, who prepared the motion and briefs and performed legal research.   Partner Robert F. Salkowski edited briefs, and attending [sic] the hearing on Defendants' Motion to Dismiss.

> ZESB charged Defendants a reasonable hourly rate of $700 for Robert F. Salkowski (senior partner of ZESB and a 1991 law school graduate), $310 for Michael D. Braunstein (an attorney at ZESB and 2017 law school graduate), with 30 years, and 4 years of practice, respectively.

(Doc. 172-1 at 2 (paragraph numbering omitted).)

Mr. Gillam's Affidavit states in relevant part:

> Based upon my review of the files and billing records maintained for this case and my expertise in the area of litigation and public records matters, I find the time devoted to this case reasonable and necessary for Plaintiff to prevail in this action. It is my opinion that the sum of $28,000.00 is a reasonable

11

attorneys' fee (exclusive of interest) to be awarded to Laura
Anthony for the legal services rendered in this case by the law
firm of [ZESB].

. . .

Finally, it is my opinion that the hourly rates charged by
Robert F. Salkowski, Esq. ($700.00) and Michael D. Braunstein,
Esq. ($310.00), are customary and reasonable based on their
experience and the services they rendered to Laura Anthony in
this matter.   In preparing this affidavit, I have familiarized
myself with the experiences and services of the aforementioned
attorneys and paralegal.

(Doc. 172-2 at 2-3.)

Plaintiff responds that before imposing Rule 11 sanctions, the Court

should take the following into consideration:

1) $7,010.00 of the requested $28,229.50 in attorneys['] fees was
   incurred before the initial Rule 11 motion was filed on
   November 16, 2018, and Plaintiff was acting *pro se* when the
   motion was filed.

2) Defendant Anthony's invoices show that from the time
   [Plaintiff's] counsel filed a notice of appearance to the date the
   Court dismissed Plaintiff's complaint – September 4, 2020 –
   the services of counsel were restricted to the review of
   pleadings and the drafting of a motion in opposition to
   Plaintiff's motion to substitute the real party in interest in
   this matter.   The filing of the motion to substitute the real
   party in interest cannot be considered a frivolous pleading, or
   one filed in bad faith.   Defendant Anthony's invoices show
   $2,100.00 in fees were incurred drafting a response to
   Plaintiff['s] motion to substitute parties.   Leaving [sic]
   $2,888.00 in fees associated with [Plaintiff's] counsel's filings.

3) While Defendant Anthony incurred $2,275.00 in fees during
   the preparation for, and attendance of mediation, that
   mediation was court ordered, occurred outside of any action

12

taken in violation of Rule 11 and Plaintiff had no control over the conduct of, nor the outcome of the mediation.

4) Lastly, Defendant Anthony incurs $5,394.00 preparing the motions for Rule 11 sanctions, which are essentially the submission of attorney fee invoices.

(Doc. 181 at 3-4.)   Plaintiff also states:

For a Lodestar assessment of Mr. Salkowski's hourly rate, the rate of $700.00 is excessive considering counsel for the Pulse Defendants, Mr. Richard Salazar, an attorney with more than thirty (30) years['] experience, and who was acting as lead counsel on behalf of the Pulse Defendants was charging an hourly rate of between $475 [and] $525 per hour.

(*Id.* at 4.)   Therefore, Plaintiff asks the Court to reduce Mr. Salkowski's hourly rate from $700.00 to $500.00, "restrict any assessment of attorneys['] fees to those fees incurred after the filing of Defendant Anthony's Rule 11 motion, and deduct from the remaining fees billings associated with Plaintiff's motion to substitute real party in interest and mediation costs." (*Id.* at 5.)

The undersigned recommends that the Anthonys' Motion be granted to the extent stated herein.   First, Plaintiff asks the Court to deduct $7,010.00 from the attorneys' fees award because this amount was incurred before the Anthonys' initial Rule 11 motion was filed on November 16, 2018 and Plaintiff was acting *pro se* when that motion was filed.   However, in the September 29, 2021 Order, the Court found that Plaintiff violated his obligations under Rule 11(b) for asserting claims against the Anthonys in the

13

Initial, First Amended, and Second Amended Complaints.   (Doc. 164 at 30.)
Specifically, the Court concluded that "a reasonable *pro se* litigant would
have known that the claims against the Anthonys were frivolous, and that
*from the outset*, Meide named these individuals as Defendants for the
improper purpose of harassment."   (*Id.* at 26 (emphasis added).)   In light of
the Court's earlier findings, the undersigned will not recommend a reduction
of the hours expended prior to November 16, 2018.

Plaintiff also argues that the Anthonys should not recover their
attorneys' fees associated with responding to Plaintiff's motion to substitute
the real party in interest, because that motion cannot be considered frivolous
or filed in bad faith.   Again, in light of the Court's earlier findings, the
undersigned is unpersuaded by Plaintiff's argument.   (*See* Doc. 141 at 9
("Not until June of 2020, well over a year after Defendants first raised the
issue and long after the Court addressed the problem with Meide at the
Hearing, did Meide file the Motion to Substitute in an attempt to avoid the
standing problem. Thus, JIC and Meide undoubtedly have had 'reasonable
time' to seek substitution of the named plaintiff in this action."); Doc. 164 at
7-13, 32 ("McLean fails to address the more salient point of why he believed it
was factually or legally appropriate to seek leave to amend and substitute <u>at</u>
<u>that time</u>.   Given the record in the case, McLean, as a member of the Bar,
should have been aware that these Motions, devoid of <u>any</u> legal or factual

support, were frivolous.   As such, the Court finds that McLean's decision to

file these Motions violated Rule 11(b)(2) and (3).") (emphasis in original).)

While the Court denied Plaintiff's motion to substitute as moot, Plaintiff has

not demonstrated that under the circumstances of this case, the Anthonys'

attorneys' fees expended on the issue of standing must be deducted from the

total award of requested fees.

Further, Plaintiff argues, without citation to any pertinent caselaw,

that the Anthonys should not recover their attorneys' fees incurred in

connection with the Court-ordered mediation, because the mediation was

outside of any action taken in violation of Rule 11 and Plaintiff had no control

over its outcome.   Rule 11(c)(4) authorizes payment of reasonable attorneys'

fees and other expenses to Defendants, which directly result from Plaintiff's

violation.   Fed.R.Civ.P. 11(c)(4).   The undersigned does not find that

recovery of the Anthonys' mediation-related attorneys' fees would be contrary

to the directives of Rule 11, or that Plaintiff's lack of control over the outcome

of the mediation has a bearing on the Court's decision.   Here, the Court

specifically found that Plaintiff lacked an objectively reasonable factual or

legal basis for prosecuting his claims against the Anthonys and prosecuted

the action for an improper purpose, and McLean needlessly multiplied the

proceedings by filing certain motions without offering any factual or legal

basis thereof (Doc. 164 at 24, 26).   *See Goodyear Tire & Rubber Co. v.*

*Haeger*, 581 U.S. 101, 137 S. Ct. 1178, 1188 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award.").

Plaintiff also argues, without legal support, that the Anthonys should not recover the attorneys' fees expended on preparing their sanctions motions in the amount of $5,394.00.   However, Plaintiff's argument seems contrary to the statutory language, which provides for "reasonable attorneys' fees and other expenses incurred *in the action*."   15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis added); *see also Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 225-26 (2d Cir. 2002) (stating that the statutory language of 15 U.S.C. § 78u-4(c)(3)(A)(ii) "can support a reading that permits the fees and expenses incurred in pursuing the sanctions to be included in the award," even including all reasonable expenses related to appellate proceedings).

Finally, Plaintiff argues that Mr. Salkowski's hourly rate of $700.00 is excessive and should be reduced to $500.00 per hour in line with Mr. Salazar's hourly rate.   The undersigned agrees.   The Anthonys have not shown the reasonableness of Mr. Salkowski's requested rate.   Mr. Salkowski's Declaration merely states that his hourly rate of $700.00 is reasonable for his 30 years of practice (*see* Doc. 172-1 at 2), but does not point to any other case in which he, or anyone else with comparable experience, has been awarded the requested hourly rate.   Mr. Gillam's Affidavit is similarly

16

conclusory and does not mention any other case in which similar rates have been awarded for comparable services in the Jacksonville, Florida legal market.   (*See* Doc. 172-2 at 2-3 (opining that "the hourly rates charged by Robert F. Salkowski, Esq. ($700.00) and Michael D. Braunstein, Esq. ($310.00), are customary and reasonable based on their experience and the services they rendered to Laura Anthony in this matter").)   Notably, while Defendants argue their counsel's efficiency and experience justify the requested rates, the discrepancies in their present Motion and in Mr. Salkowski's Declaration as to counsel's listed hours further support a reduction of Mr. Salkowski's rate from $700.00 to $500.00 per hour.

With respect to Mr. Braunstein's hourly rate of $310.00 and the paralegal's hourly rate of $125.00, Plaintiff does not raise any objections and the undersigned finds these rates to be reasonable considering Mr. Braunstein's level of experience and the Court's knowledge about reasonable rates awarded in other cases in this District.   *See, e.g.*, *Lanard Toys Ltd. v. Dolgencorp, LLC*, No. 3:15-cv-849-MMH-PDB, 2022 WL 1597276, *20 (M.D. Fla. Feb. 2, 2022) (recommending hourly rates of $425 to $475 for partners, $300 to $350 for associates, and $125 to $200 for paralegals in an action under the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act) (report and recommendation adopted on June 22, 2022); *United States v. Sleep Med. Ctr.*, No. 3:12-cv-1080-J-39PDB, 2016 WL 11567785, *13-14 (M.D.

17

Fla. Aug. 23, 2016) (stating that "the prevailing market rate in Jacksonville for similar services (qui tam or complex commercial or employment litigation) by attorneys of reasonably comparable skills, experience, and reputation to . . . well-credentialed, well-experienced, and well-regarded [attorneys] is the high-end partner rate of $450 an hour," "the low-end prevailing market rate in Jacksonville for new partners" is $250 an hour, "the low-end prevailing market rate in Jacksonville for new associates" is $175 an hour, "the prevailing market rate in Jacksonville for experienced paralegals" is $125 an hour and $100 an hour for a paralegal with little or no experience, and "the prevailing market rate in Jacksonville for law students" is $125 an hour); *Durden v. Citicorp Trust Bank, FSB*, 763 F. Supp. 2d 1299, 1308-09 (M.D. Fla. 2011) (holding that hourly rates of $385.00 for a partner and $195.00 for an associate attorney were reasonable for Jacksonville, Florida in an action for violations of, *inter alia*, the Florida Securities and Investor Protection Act).

Accordingly, after reduction of Mr. Salkowski's hourly rate to $500.00, the undersigned recommends that the Anthonys' recover the following attorneys' fees:

| Name | Experience | Time | Hourly Rate | Total: |
|---|---|---|---|---|
| Attorney Robert F. Salkowski | 1991 law school graduate | 22.95 (8.25 after McLean's appearance) | $500.00 | $11,475.00 ($4,125.00 after McLean's |

| | | | | appearance) |
|---|---|---|---|---|
| Attorney Michael D. Braunstein | 2017 law school graduate | 39.20 (22.20 after McLean's appearance) | $310.00 | $12,152.00 ($6,882.00 after McLean's appearance) |
| Paralegal Nadia Espinoza | | 0.10 (all time expended after McLean's appearance) | $125.00 | $12.50 |
| Total: | | 62.25 | | $23,639.50 |

The lodestar in this case is $23,639.50.   While the Court may adjust the lodestar, the undersigned will not recommend an upward or downward adjustment as it has not been requested and the undersigned's independent review of the record does not demonstrate that it would be justified. Accordingly, the undersigned will recommend that the Anthonys be awarded attorney's fees in the amount of $23,639.50.   The undersigned further recommends that Plaintiff and his counsel be found jointly and severally liable for the attorneys' fees incurred after McLean's appearance on June 11, 2020 in the amount of $11,007.00.   Also, as stated previously, the Anthonys' request for prejudgment interest should be denied without prejudice.

The Anthonys also seek reimbursement of the following costs: $600.00 for the mediation fee; $297.60 for in-house photocopies; and $200.98 for Federal Express charges.   (Doc. 172-1.)   However, the Anthonys do not state

19

the legal basis for the costs.   If these costs are sought pursuant to 28 U.S.C.
§ 1920, they would not be recoverable.   *See Scelta v. Delicatessen Support
Servs., Inc.*, 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002) (stating that
"facsimiles, long distance telephone calls, couriers, express mail,
computerized legal research, attorney travel and lodging, postage, search
services, office supplies, attorney meals, secretarial services, mediation and
expert witness fees" are not compensable under 28 U.S.C. § 1920, because
they are not enumerated in the statute); *Brandt v. Magnificent Quality
Florals Corp.*, No. 07-20129-CIV, 2011 WL 4625379, *17 (S.D. Fla. Sept. 30,
2011) (electing to follow the Eleventh Circuit's unpublished decision in *Gary
Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 845-46 (11th Cir.
2008), where the court denied the prevailing party's request for mediation
expenses, among other expenses, as not covered under 28 U.S.C. § 1920);
*Tillman v. Marlin eSourcing Solutions, LLC*, No. 6:07-cv-136-Orl-18KRS,
2008 WL 5210717, *5 (M.D. Fla. Dec. 11, 2008) (disallowing courier/postal
charges as unrecoverable and the requested photocopying costs because there
was no itemization of the photocopies); *Oriental v. Akal Sec., Inc.*, No. 05-
22189-Civ-JORDAN/TORRES, 2007 WL 9700750, *10 (S.D. Fla. July 31,
2007) ("Neither Fed. R. Civ. P. 54 nor 28 U.S.C. § 1920 call for recovery of
mediation expenses.").   Here, the Anthonys seek to recover $297.60 for in-
house photocopies, but they do not describe "the nature or purpose of the

20

photocopying." *See Scelta*, 203 F. Supp. 2d at 1340 (stating that expenses for photocopying, among others, are compensable under 28 U.S.C. § 1920 "when adequately described and documented" and when "necessarily obtained for use in the case"; and while "an accounting for each photocopy is implausible, the defendants have made no attempt to differentiate recoverable copying costs from nonrecoverable general photocopying expenses").   Further, to the extent the requested costs "fall within recoverable Rule 11(c) expenses, [Defendants have] failed to provide the 'sufficient particularity' required by *Norman*, 836 F.2d at 1303, to permit this Court to ascertain their inclusion." *Tillman*, 2008 WL 5210717 at *5.[10]   Therefore, the undersigned recommends that the requested costs in the amount of $1,098.58 be disallowed.

### B.   The Centineo Defendants' Motion

Defendants Gregory Centineo, Julie Natale, Agnes King, and John King seek reasonable attorneys' fees as sanction against Plaintiff pursuant to Rule 11, Fed.R.Civ.P.; 15 U.S.C. § 78u-4(c); Local Rule 7.01(c); and the Court's September 29, 2021 Order.   (*See* Doc. 171.)   Defendants seek $43,215.00 in attorneys' fees incurred after the filing of the First Amended Complaint on September 24, 2019.   (*Id.* at 2.)

In support of their position that they should be awarded attorneys' fees

---

[10]   In *Tillman*, the court found that the cost for the mediator was recoverable as a reasonable expense under Rule 11(c).   2008 WL 5210717 at *6.

for the entire action after the filing of the First Amended Complaint,

Defendants state:

> In this case, the Court found that Plaintiff's securities fraud claims in his First and Second Amended Complaints were frivolous.   The Court also determined that Count I (to convene a grand jury) and Count III (aiding and abetting securities fraud) of Plaintiff's Initial Complaint were "patently frivolous," but dismissed those counts with prejudice before Plaintiff filed the First and Second Amended Complaints.   As to the remaining counts of Plaintiff's First and Second Amended Complaints, the Court did not make express findings as to the frivolousness or non-frivolousness of those individual claims.   However, the Court did become convinced and did find, with Plaintiff's continued filings of the First and Second Amended Complaints, that Plaintiff on the whole "prolonged this litigation for the improper purpose of harassing Defendants into a settlement." The Court found that Plaintiff's "decision to file the First and Second Amended Complaints, in his own name, after the Court cautioned him that he did not appear to be the correct plaintiff to pursue this action evidences a 'deliberate indifference to obvious facts,'" and that Plaintiff, in his amended pleadings, "still asserted, falsely, that he purchased the securities."   The Court determined the First and Second Amended Complaints were filed with an improper purpose in violation of Rule 11(b).

> Additionally, the Court found that Plaintiff's briefing in response to Defendants' motions to dismiss the Second Amended Complaint constitutes further evidence that Plaintiff filed this action for an improper purpose.

> . . .

> Like the complaints in [*Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010)], Plaintiff's First and Second Amended Complaints in this action were substantial violations of Rule 11(b); they were filed for the improper purpose to harass Defendants into settlement; and no nonfrivolous claims of sufficient quality were included by Plaintiff to make the suit as a whole nonabusive and the Rule 11 violations not substantial.   As

such, the PSLRA's presumptive sanction of Defendants'
reasonable attorneys' fees for the entire action is triggered.

(*Id.* at 7-8, 11-12 (internal citations omitted).)

Defendants add that although they are legally entitled to their fees for

the entire case under the PSLRA, they are not seeking recovery of their fees

in connection with defending against the Initial Complaint.[11]   (*Id.* at 13.)

Defendants assert that "Plaintiff cannot contend, nor has he tried to contend

with any evidentiary support, that it would be unjust to award Defendants

their attorneys' fees after Plaintiff filed his First and Second Amended

Complaints."   (*Id.* at 14.)   Defendants also assert that:

> Plaintiff's First and Second Amended Complaints in this action
> are not *de minimis* violations of Rule 11(b).   In addition to
> Plaintiff having never pled any count in this action that survived
> a motion to dismiss from Defendants, the Court found that the
> entire action by Plaintiff violated Rule 11(b)(1), being pursued for
> an improper purpose and calculated to harass Defendants into a
> settlement.

(*Id.* at 14-15.)   As such, according to Defendants, Plaintiff has not rebutted

the presumption in favor of awarding the requested attorneys' fees as a

sanction under the PSLRA.   (*Id.* at 12-15.)

As stated earlier, the Centineo Defendants seek $43,215.00 in

_____

[11]   Defendants also are not seeking recovery of their attorneys' fees for
preparation of their present Motion to determine the amount of fees, even though
such fees are fees "incurred in the action" and thus recoverable under the PSLRA.
(Doc. 171 at 15 n.7 (citing *Gurary*, 303 F.3d at 225-26).)

attorneys' fees that were charged by the Liles Firm after September 24, 2019, as follows:

| Name | Experience | Time | Hourly Rate | Total: |
|---|---|---|---|---|
| Attorney Michael D. Lee | Florida Bar member since 2001 | 122.5 | $350.00 | $42,875.00 |
| Attorney Robert B. George | Florida Bar member since 1997 | 3.4 | $100.00[12] | $340.00 |
| Total: | | 125.9 | | $43,215.00 |

In support of the requested hours and hourly rates, the Centineo Defendants submit: (1) the attorneys' billing records, indicating the date, the timekeeper, their hours and hourly rates, and a description of the work performed; (2) the Declaration of Michael D. Lee, a partner at the Liles Firm; and (3) the Declaration of Geddes D. Anderson, Jr., a founding partner of Murphy & Anderson, P.A.   (Doc. 171-1; Doc. 171-2; Doc. 171-3.)

The Declaration of Mr. Lee provides, in relevant part:

> I served as lead trial counsel for Defendants in this action. I managed and oversaw all aspects of defending against Plaintiff's claims, including but not limited to drafting and preparing all of the motions, briefing and other filings in the case. My law partner, Robert B. George, assisted me by handling mediation of the case when I was unavailable.
>
> I have reviewed The Liles Firm's accounting records with regard to the work performed by myself and by Robert George.   I have specifically reviewed each task and each charge associated

---

[12] Mr. George's hourly rate is low because of a billing error to the clients. (Doc. 171 at 17 n.8; *see also* Doc. 171-2 at 4.)

therewith, and have removed each charge for a task that is excessive, duplicative, clerical or otherwise unreasonable.   . . .

The spreadsheet attached as Exhibit A is a true and accurate copy of the time records that are maintained by The Liles Firm in the ordinary course of its business, except for entries that have been removed by me during my review of the charges as part of this motion.

The hourly rates requested are the same rates that were charged by The Liles Firm to Defendants in this case: Michael D. Lee at $350 per hour; and Robert B. George at $100 per hour. Although Mr. George is a partner at The Liles Firm and has been practicing law in Florida since 1997, his requested rate is limited to $100 per hour because that is what The Liles Firm (mistakenly) billed Defendants for his 3.4 hours of work in this case.

The number of hours requested totals 125.9, representing the reasonable hours incurred and billed by The Liles Firm following Plaintiff's filing of his First and Second Amended Complaints.   I worked 122.5 of those hours, and Robert George worked 3.4 hours.

On the basis of my review, and as reflected in Exhibit A, Defendants are respectfully requesting an award of attorneys' fees in the amount of $43,215.00 for defense of this action following Plaintiff's filing of his First and Second Amended Complaints.

(Doc. 171-2 at 3-4 (paragraph numbering omitted).)

The Declaration of Mr. Anderson provides in relevant part:

I have been a practicing lawyer in the Jacksonville, Florida community since 1998, and am familiar with the prevailing hourly rates in the Jacksonville legal community for lawyers of varying levels of experience, skill, and reputation.
. . .

In connection with my analysis of the Law Firm's rates and

hours, I have reviewed the following pleadings, motions, memoranda, orders, and other materials: [Docs. 85, 86, 87, 88, 92, 94, 97, 104, 117, 118, 119, 120, 121, 127, 128, 135, 136, 141, 142, 147, 156, 162, 164, 171, 171-1, 171-2].

In addition to reviewing the foregoing materials, I have discussed the matter with Michael D. Lee, lead counsel at the Liles Firm for the Centineo Defendants.

Aside from my review of the work product and results obtained in the case, I am personally familiar with the Liles Firm, P.A. and with the skills, reputations, and experience of the Law Firm's attorneys who worked on the case. I have worked with and otherwise observed the legal skills and work product of Michael D. Lee and Robert B. George.
. . .

In rendering my opinion, I also reviewed relevant case law relating to the recovery of attorneys' fees pursuant to the Private Securities Litigation Reform Act (PSLRA) and Rule 11(b) of the Federal Rules of Civil Procedure, such as *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010).

The relevant experience and skill of the attorneys representing the Centineo Defendants in this case, and the resources they are able to bring to bear to assist clients on sophisticated legal disputes, support hourly billing rates in excess of the $350/hour rate that was predominantly charged, and in fact would support charging hourly rates at the upper end of the Jacksonville legal market for the following reasons:

    a. The attorneys who worked on this matter possess a high degree of expertise and skill. Michael D. Lee and Robert B. George are highly experienced in the areas of commercial and civil litigation and federal practice.

    b. The Law Firm could also reasonably command rates at the top end of the Jacksonville legal market because of the significance of the issues in this case for the Centineo Defendants. The Centineo Defendants were highly incentivized to hire attorneys who could litigate the case as skillfully as possible.

    c. Finally, I note that the results obtained in a case can

also be considered when evaluating whether an attorney's fee was reasonable.   Herein, the Law Firm prevailed on its motions to dismiss Plaintiff's claims.

In light of the above considerations, the Law Firm could reasonably have charged the rates charged in this case, given the Jacksonville, Florida legal market.   My opinion with respect to each of the lawyers is set forth below:

    a.  Mr. Lee's requested rate in this case is $350 per hour. Based on his skill and experience and rates in the local Jacksonville legal community, it is my opinion that a rate of $350 per hour for Mr. Lee is reasonable.

    b.  Mr. George's requested rate in this case is $100 per hour, for a total of 3.4 hours, in preparing for and attending mediation in this case.   Based on his skill and experience and rates in the local Jacksonville legal community, it is my opinion that the $100 per hour rate is well below a reasonable hourly rate for Mr. George.

In terms of the number of hours at issue, I reviewed the spreadsheet of attorneys' fees incurred by the Centineo Defendants following Plaintiff's First Amended Complaint and compared the number of hours expended to the work-product generated and, otherwise, the activity that was occurring in the case on the relevant issues.   In my opinion, Plaintiff's claims were defended efficiently and effectively and the total number of hours expended by the attorneys in regard to those claims was reasonable.

It is my opinion that any law firm committed to high-quality work product would have spent a similar amount of time defending Plaintiff's claims.

In consideration of the above, it is my judgment that $43,215.00 is a reasonable fee to incur in, and to defend, this action following the filing of Plaintiff's First Amended Complaint. Such amount is based upon 125.9 hours of attorney time.

(Doc. 171-3 at 2-8 (paragraph numbering omitted).)

Plaintiff responds that Defendants improperly seek fees beyond "June

11, 2020 when litigation regarding the First and Second Amended Complaints ceased" with the appearance of Plaintiff's counsel.   (Doc. 179 at 2.)   Plaintiff argues that "[a]fter June 11, 2020, the only action taken as to Plaintiff's First and Second Amended Complaints was the Court Order of September 4, 2020," which granted Defendants' motions to dismiss.   (*Id.*) Plaintiff further argues that:

> Defendants . . . are seeking fees that do not stem solely from the securities and fraud claims asserted in the First and Second Amended Complaints: specifically, Defendants . . . seek attorneys['] fees incurred after June 11, 2020 when [Plaintiff's] counsel filed a Notice of Appearance and requested leave of the Court to file a Third Amended Complaint, fees associated with . . . Defendants' response to Plaintiff's motion to recuse the judge from this case, and fees incurred after the Court issued its Order of September 29, 2021 which were generated in relation to mediation and preparation of the attorneys['] fees motion, and research into the continued viability of Plaintiff's State Law claims   Also included in these invoices are billable hours associated with requests for extension of time to file, and communications with co-defendants' counsel with the purpose of coordinating filings with the court.

(*Id.* at 2-3.)

According to Plaintiff, the relevant time period for attorneys' fees is September 24, 2019 until June 11, 2020, during which time Defendants incurred $15,470.00 in fees.   (*Id.* at 3.)   Plaintiff argues that after reducing this amount by $6,755.00, which was billed for responding to Plaintiff's motion to recuse the Court, Defendants should recover only $8,715.00 for their attorneys' fees.   (*Id.*)

Plaintiff also argues that the billing entries after September 4, 2020 have no association with the securities fraud claims in the First and Second Amended Complaints, and, therefore, the following entries should be disallowed:

- Entries related to mediation: $175.00 on 09/28/20, $175.00 on 10/13/20, $105.00 on 10/14/20, $175.00 on 10/23/20, $875.00 on 12/07/20, and $270.00 on 12/10/20;

- Entries related to state claims: $420.00 on 10/22/20, and $70.00 on 11/04/20;

- Entries related to extensions of time: $700.00 on 01/13/20;

- Entries related to preparation of motions for fees: $700.00 on 12/22/20, $1,225.00 on 01/19/21, $1,050.00 on 01/20/21, $1,400.00 on 01/21/21, $2,800.00 on 01/28/21, and $1,225.50 on 01/29/21.

(*Id.* at 3-4.)

Plaintiff asserts that the fees associated with requests to file a third amended complaint, to substitute the real party in interest, to recuse the Court, to extend time, and to research state claims are beyond the scope of the Court's Order and are not related to the acts identified as sanctionable. (*Id.* at 6.)   Also, Plaintiff points out that because mediation was Court ordered, Plaintiff should not be responsible for the fees associated with it. (*Id.* at 6-7.)   Finally, Plaintiff argues that he "should not be further punished

by having to pay attorneys['] fees associated with the filing of sanction motions," as those fees exceed $8,400.00, whereas the total fees associated with the First and Second Amended Complaints are $8,715.00.   (*Id.* at 7.)

The undersigned recommends that the Centineo Defendants' Motion be granted.   As an initial matter, the undersigned agrees with the Centineo Defendants that they should be awarded attorneys' fees for the entire action after the filing of the First Amended Complaint in light of the Court's prior findings, relevant caselaw, and the circumstances of this case.   *See, e.g., Gurary*, 303 F.3d at 226 ("We hold that Jaroslawicz's complaint, which contains frivolous claims that were summarily dismissed and no claims of such merit as to make his suit as a whole nonabusive, subjects him to full sanctions, including appellate expenses.").   First, Plaintiff's violations of Rule 11 were "substantial."   *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 695 (11th Cir. 2010) (Tjoflat, J., dissenting).   As Defendants explain:

> In this case, the Court found that Plaintiff's securities fraud claims in his First and Second Amended Complaints were frivolous.   The Court also determined that Count I (to convene a grand jury) and Count III (aiding and abetting securities fraud) of Plaintiff's Initial Complaint were "patently frivolous," but dismissed those counts with prejudice before Plaintiff filed the First and Second Amended Complaints.   As to the remaining counts of Plaintiff's First and Second Amended Complaints, the Court did not make express findings as to the frivolousness or non-frivolousness of those individual claims.   However, the Court did become convinced and did find, with Plaintiff's

continued filings of the First and Second Amended Complaints, that Plaintiff on the whole "prolonged this litigation for the improper purpose of harassing Defendants into a settlement." The Court found that Plaintiff's "decision to file the First and Second Amended Complaints, in his own name, after the Court cautioned him that he did not appear to be the correct plaintiff to pursue this action evidences a 'deliberate indifference to obvious facts,'" and that Plaintiff, in his amended pleadings, "still asserted, falsely, that he purchased the securities." The Court determined the First and Second Amended Complaints were filed with an improper purpose in violation of Rule 11(b).

Additionally, the Court found that Plaintiff's briefing in response to Defendants' motions to dismiss the Second Amended Complaint constitutes further evidence that Plaintiff filed this action for an improper purpose.

. . .

Like the complaints in [*Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010)], Plaintiff's First and Second Amended Complaints in this action were substantial violations of Rule 11(b); they were filed for the improper purpose to harass Defendants into settlement; and no nonfrivolous claims of sufficient quality were included by Plaintiff to make the suit as a whole nonabusive and the Rule 11 violations not substantial. As such, the PSLRA's presumptive sanction of Defendants' reasonable attorneys' fees for the entire action is triggered.

(Doc. 171 at 7-8, 11-12 (internal citations omitted).)[13]

---

[13] Here, Plaintiff does not argue that his state law claims, which were dismissed without prejudice to re-filing in the appropriate state court, make his pleadings as a whole non-abusive and the Rule 11 violations not substantial. *See Gurary*, 303 F.3d at 224 n.5 (emphasis added) ("In dismissing Gurary's state law claim without prejudice, the district court did not make a specific factual finding with respect to whether this nonfederal allegation in the complaint was frivolous. Because Jaroslawicz has not raised before this court the argument that his state law allegation suffices to make the complaint *as a whole* nonabusive, we need not consider this possible contention. . . . Accordingly, we decline to decide whether the presence of a state law claim, if it has sufficient merit, may preclude a finding of

When the presumptive sanction of attorneys' fees and other expenses is triggered, a plaintiff has an opportunity to rebut it "by demonstrating that the award of attorneys' fees would impose an unreasonable, unjust burden on [him] and that the failure to award fees would not impose a greater burden on the defendants." *Thompson*, 610 F.3d at 696 (Tjoflat, J., dissenting) (citing 15 U.S.C. § 78u-4(c)(3)(B)(i)).   Here, Plaintiff has not rebutted the presumption in favor of awarding attorneys' fees as a sanction, as he has not shown that his First and Second Amended Complaints were *de minimis* violations of Rule 11(b), or that it would be unjust to award Defendants their fees after the filing of the First Amended Complaint, even if his state law claims were nonfrivolous.   *See Gurary*, 303 F.3d at 226 (holding that "the presence of some nonfrivolous claims in an otherwise frivolous complaint is not sufficient, standing alone, to establish that either the violation of Rule 11 was *de minimis* or that the sanctions would create an unreasonable burden, for purposes of overcoming the statutory presumption of the PSLRA").

Plaintiff asks that Defendants should not be awarded fees after McLean's appearance on June 11, 2020, because "the only action taken as to Plaintiff's First and Second Amended Complaint was the Court['s] Order of September 4, 2020," which granted Defendants' motions to dismiss.   (Doc.

---

a substantial failure to comply with Rule 11 in a federal securities action.")

179 at 2.)   Plaintiff also asks the Court to reduce from the award the time billed for responding to Plaintiff's motion to recuse the Court in the amount of $6,755.00.   (*Id.* at 3.)   Contrary to Plaintiff's arguments, the undersigned does not believe that the following entries should be disallowed: (1) entries related to state claims in the amount of $490.00, for the reasons stated previously; (2) entries related to extensions of time in the amount of $700.00, which were actually incurred before McLean's appearance; (3) entries related to the preparation of the motions for sanctions[14] in the amount of $8,400.50 for the period December 22, 2020 through January 29, 2021; (4) entries related to responding to Plaintiff's motion to recuse the Court in the amount of $6,755.00, for the reasons stated earlier; (5) entries associated with requests to file a third amended complaint and to substitute the real party in interest, for the reasons stated earlier; and (6) entries related to preparation for and attendance at the Court-ordered mediation in the amount of $1,775.00, for the reasons stated earlier.   Accordingly, the undersigned recommends that the Centineo Defendants be awarded their requested attorneys' fees as follows:

---

[14] Although Plaintiff states that these entries are related to the preparation of the motions for fees, they were expended before the Court's September 29, 2021 Order awarding sanctions.   In any event, as stated earlier, Defendants' time would be compensable not only for the motions for sanctions, but also for the present Motion to determine the amount of fees.   However, the Centineo Defendants advise that they are not seeking recovery of their attorneys' fees for preparation of their present Motion to determine the amount of fees.   (Doc. 171 at 15 n.7.)

| Name | Experience | Time | Hourly Rate | Total: |
|---|---|---|---|---|
| Attorney Michael D. Lee | Florida Bar member since 2001 | 122.5 | $350.00 | $42,875.00 |
| Attorney Robert B. George | Florida Bar member since 1997 | 3.4 | $100.00 | $340.00 |
| Total: | | 125.9 | | $43,215.00 |

The undersigned notes that Plaintiff does not object to counsel's hourly rates and, in any event, these hourly rates are reasonable considering Mr. Lee and Mr. George's respective levels of experience and skill, the results obtained in the case, the statements made in the Declarations of Mr. Lee and Mr. Anderson, and the Court's own knowledge of the fees customarily charged in the Jacksonville, Florida legal market for similar services. Further, other than objecting to specific categories of billing entries as shown above, Plaintiff does not argue that defense counsel's hours spent on the case are unreasonable.   The undersigned finds that the hours spent by Mr. Lee and Mr. Anderson are reasonable based on a review of the billing records and taking into account the statements made in the Declarations of Mr. Lee and Mr. Anderson.

The lodestar in this case is $43,215.00.   While the Court may adjust the lodestar, the undersigned will not recommend an upward or downward adjustment as it has not been requested and the undersigned's independent review of the record does not demonstrate that it would be justified.

34

Accordingly, the undersigned will recommend that the Centineo Defendants be awarded attorney's fees in the amount of $43,215.00 and their Motion be granted.

## C.    The Pulse Defendants' Motion

Pulse Evolution Corporation, Evolution AI Corporation, John Textor, Jordan Fiksenbaum, and Frank Patterson (collectively, the "Pulse Defendants") move for a determination of the proper amount of attorneys' fees as sanction against Plaintiff pursuant to Rule 11, Fed.R.Civ.P.; 15 U.S.C. § 78u-4(c); Local Rule 7.01(c); and the Court's September 29, 2021 Order. (*See* Doc. 174.)   The Pulse Defendants seek $68,442.50 in attorneys' fees incurred after the filing of the First Amended Complaint, for the defense of this action as contemplated by 15 U.S.C. § 78u-4(c)(3)(A)(ii).   (*Id.* at 2.)   The Pulse Defendants explain:

> Since the award of the sanctions stems from Mr. Meide's substantial failure of his First Amended Complaint and any **complaint** to comply with any requirement of Rule 11(b) . . . the appropriate sanction is an award to the Pulse Defendants of the reasonable attorneys' fees and other expenses incurred in the action.   Mr. Meide's failures to comply were substantial because (i) Mr. Meide brought the claims for an improper purpose, namely[,] to harass certain Pulse Defendant and (ii) Mr. Meide's contentions regarding . . . his alleged purchase of shares not only had no factual support, but documentation that he signed established that in fact he was not the purchaser of the shares that formed the basis of the claims against the Pulse Defendants. Mr. Meide's lack of standing to bring the claims was addressed by all defendants as well as the Court.   Despite being warned that his ability (as opposed to the purchaser's ability) to bring the

35

claim was doubtful, he proceeded to bring the claim two more times, despite the documentation establishing that a trust was the actual purchaser of shares.   Further, given Mr. Meide's lack of legal standing combined with Mr. Meide's use of the filing of the lawsuit to defame certain Pulse Defendants on online investor message boards, Mr. Meide clearly was using the First and Second Amended Complaints to harass the Pulse Defendants in violation of Rule 11(b).

(*Id.* at 9-10 (emphasis in original).)

The breakdown of the requested attorneys' fees is as follows (*see id.* at 16-28):

| Name | Experience | Time | Hourly Rate | Total: |
|------|-----------|------|-------------|--------|
| Attorney Richard Salazar | 30 years; Florida Bar member since 1991 | 127.9 (104.6 in 2019-2020; 23.3 in 2021) | $475.00 (in 2019-2020); $525.00 (in 2021) | $61,917.50 ($49,685.00 in 2019-2020; $12,232.50 in 2021) |
| Attorney Jarrett Davis (associate) | 3 years; Florida Bar member since 2018 | 16.2 (14 in 2019-2020; 2.2 in 2021) | $265.00 (in 2019-2020); $300.00 (in 2021) | $4,370.00 ($3,710.00 in 2019-2020; $660.00 in 2021) |
| Paralegal Tabitha Pellegrene | Over 30 years, a Florida registered paralegal | 7.3 | $235.00 | $1,715.50 |
| Summer Associate Mia Larson | Third-year law student at the time of service; Florida Bar member since 2021 | 3.2 | $120.00 | $384.00 |
| Total: | | 154.6 | | $68,387.00 |

36

The Pulse Defendants argue that the hourly rates above "are reasonable and within the market rates charged by similarly-qualified professionals within the Middle District of Florida and the Jacksonville Division" and the hours spent on the case are reasonable as well.   (*Id.* at 13.)   In support of the requested hours and hourly rates, the Pulse Defendants submit: (1) counsel's billing records, indicating the date, the timekeeper, their hours and hourly rates, and a description of the work performed; (2) the Affidavit of Richard G. Salazar, an attorney with the law firm of Buchanan Ingersoll & Rooney PC; and (3) the Affidavit of G. Wrede Kirkpatrick, an attorney with the law firm of Hines Norman Hines P.L.   (*See id.* at 15-45.)

The Affidavit of Mr. Salazar provides in relevant part:

> I have been licensed to practice law in Florida since October of 1991.   During this time, my practice has consisted primarily of commercial litigation in state and federal courts in Florida.
> . . .
>
> . . .   My time was billed at an hourly rate of $475 during 2019 and 2020 and $525 per hour for 2021.   The billing rates represent discounted billing rates from my standard billing rate at the time of the entries in question.
> . . .
>
> I am lead counsel in the case and was the primary drafter of most of the filings in this case on behalf of the Pulse Defendants that were filed subsequent to the First Amended Complaint.   I also was the primary contact with the Pulse Defendants.
>
> I hereby verify that I have reviewed the charges reflected in

Exhibit "A" and that I have removed charges for any task in which the charges are excessive, duplicate, clerical, or otherwise unreasonable.   Further, in an abundance of caution, for the purpose of seeking an award of sanctions, undersigned counsel has reduced the amount sought for recovery even though the original amounts charged were reasonable.   . . .   As a result, the amounts sought as sanctions awarded to the Pulse Defendants represent an amount lower than the Pulse Defendants incurred in defense of the claims asserted against them in the First Amended Complaint and the Second Amended Complaint.

(*Id.* at 27-29 (paragraph numbering omitted).)

The Affidavit of Mr. Kirkpatrick provides in relevant part:

I have been licensed to practice law in Florida since September of 1993.   During this time, my practice has consisted primarily of civil litigation in state and federal courts throughout Florida, including primarily the Middle District of Florida. . . .

I am familiar with the issues in the above referenced case and have reviewed the pleadings, and the time entries and billings of Buchanan Ingersoll & Rooney P.C. ("Buchanan").   I am also aware of Buchanan's hourly fee arrangement with its clients in this case.   I know and am familiar with the qualifications of Richard G. Salazar, the lead attorney at Buchanan working on the above case for the firm's clients.

I am familiar with the amounts customarily charged by attorneys and allowed by this Court for attorneys in the Middle District of Florida, including the Jacksonville Division.   My knowledge is based on my experience litigating in the Jacksonville Division as well as my familiarity with the rates charged by other professionals within the Middle District of Florida and the Jacksonville Division.   It is my opinion that the hourly rates of $475.00 and $525.00 for Richard Salazar, $265.00 and $300.00 for Jarrett Davis, $120.00 for Mia Larson and $235.00 for Tabitha Pellegrene are reasonable and within the prevailing market rates in the relevant legal community for similar services.

> Based on my review of the time entries . . . and the pleadings (starting chronologically with the First Amended Complaint) filed in this matter, it is my opinion that the time expended by the legal professionals on behalf of the Pulse Defendants . . . is reasonable, especially given my interview of lead counsel Salazar regarding the details of this litigation and the voluntary reduction of the amounts of time and fees being sought as a sanction.

> In light of all of the foregoing and my review of the pleadings and billing statements, as well as interviewing Richard Salazar, Esq., it is my opinion that the requested fee award of $68,442.50 is reasonable.

(*Id.* at 32-34 (paragraph numbering omitted).)

Plaintiff responds that Defendants improperly seek fees beyond "June 11, 2020 when litigation regarding the First and Second Amended Complaints ceased" with the appearance of Plaintiff's counsel.  (Doc. 180 at 2.)  Plaintiff argues that "[a]fter June 11, 2020, the only action taken as to Plaintiff's First and Second Amended Complaints was the Court Order of September 4, 2020," which granted Defendants' motions to dismiss.  (*Id.*) Plaintiff further argues that:

> Defendants are seeking fees that do not stem solely from the securities and fraud claims asserted in the First and Second Amended Complaints: specifically, the Pulse Defendants seek attorneys['] fees incurred after June 11, 2020 when [Plaintiff's] counsel filed a Notice of Appearance and requested leave of the Court to file a Third Amended Complaint, fees associated with the Pulse Defendants' response to Plaintiff's motion to recuse the judge from this case, and fees incurred after the Court issued its Order of September 29, 2021 which were generated in relation to mediation and preparation of the attorneys['] fees motion, and

> research into alternative arguments for the recovery of fees
> beyond the sanctions ordered by the Court.   Also included in
> these invoices are billable hours associated with requests for
> extension of time to file, and communications with co-defendants'
> counsel with the purpose of coordinating filings with the court.

(*Id.* at 2-3.)

According to Plaintiff, the relevant time period for attorneys' fees is September 24, 2019 until June 11, 2020, during which time Defendants incurred $17,454.00 in fees for work performed by Mr. Salazar and Mr. Davis. (Doc. 180 at 3; *but see* Doc. 174 at 16-18 (showing this amount to be $18,167.00).)   Plaintiff argues that after reducing this amount by $5,802.50, which was billed for responding to Plaintiff's motion to recuse the Court, the Pulse Defendants should recover only $11,651.50 for their attorneys' fees. (Doc. 180 at 3.)

Plaintiff also argues that the billing entries after September 4, 2020 have no association with the securities fraud claims in the First and Second Amended Complaints, and, therefore, the following entries should be disallowed:

- Entries related to mediation: $712.00 on 09/09/20, $950.00 on 09/10/20, $332.50 on 10/02/20, $95.00 on 10/07/20, $712.50 on 10/12/20, $332.50 on 10/16/20, $475.00 on 10/22/20, $475.00 on 10/23/20, $475.00 on 10/29/20, $285.00 on 11/06/20, $617.50 on 11/16/20, $712.50 on 12/03/20, $522.50 on 12/04/20, $997.50 on 12/07/20, $760.00 on

12/08/20, $950.00 on 12/09/20, and $2,280.00 on 12/10/20;

- Entries related to research of fee recovery in addition to court sanction: $392.00 on 09/15/20, $644.00 on 09/29/20, and $285.00 on 09/30/20;

- Entries related to extensions of time: $712.50 on 09/21/20, $315.00 on 01/11/21, $262.50 on 01/12/20, and $525.00 on 01/13/20;

- Entries related to preparation of motions for fees: $142.50 on 12/15/20, $285.00 on 12/17/20, $840.00 on 01/14/21, $892.50 on 01/15/21, $660.00 on 01/19/21, $1,260.00 on 01/21/21, $1,207.50 on 01/25/21, and $892.50 on 01/29/21.

(*Id.* at 4-6.)   Plaintiff asserts that fees associated with requests to file a third amended complaint, to substitute the real party in interest, to recuse the Court, to extend time, and to research a claim to more fees are beyond the scope of the Court's Order and are not related to the acts identified as sanctionable.   (*Id.* at 7.)   Also, Plaintiff points out that because mediation was Court-ordered, Plaintiff should not be responsible for the fees associated with it.   (*Id.* at 7-8.)   Finally, Plaintiff argues that he "should not be further punished by having to pay attorneys['] fees associated with the filing of sanction motions," as those fees exceed $11,000.00, whereas the total fees associated with the First and Second Amended Complaints are $11,651.50. (*Id.* at 8.)

    The undersigned recommends that the Pulse Defendants be awarded

their attorneys' fees for the entire action incurred after the filing of the First

Amended Complaint in light of the Court's prior findings, relevant caselaw,

and the circumstances of this case.   *See Gurary*, 303 F.3d at 226.   First,

Plaintiff's violations of Rule 11 were "substantial."   *Thompson*, 610 F.3d at

695.   As the Pulse Defendants explain:

> Since the award of the sanctions stems from Mr. Meide's
> substantial failure of his First Amended Complaint and any
> **complaint** to comply with any requirement of Rule 11(b) . . . the
> appropriate sanction is an award to the Pulse Defendants of the
> reasonable attorneys' fees and other expenses incurred in the
> action.   Mr. Meide's failures to comply were substantial because
> (i) Mr. Meide brought the claims for an improper purpose,
> namely[,] to harass certain Pulse Defendant and (ii) Mr. Meide's
> contentions regarding . . . his alleged purchase of shares not only
> had no factual support, but documentation that he signed
> established that in fact he was not the purchaser of the shares
> that formed the basis of the claims against the Pulse Defendants.
> Mr. Meide's lack of standing to bring the claims was addressed by
> all defendants as well as the Court.   Despite being warned that
> his ability (as opposed to the purchaser's ability) to bring the
> claim was doubtful, he proceeded to bring the claim two more
> times, despite the documentation establishing that a trust was
> the actual purchaser of shares.   Further, given Mr. Meide's lack
> of legal standing combined with Mr. Meide's use of the filing of
> the lawsuit to defame certain Pulse Defendants on online
> investor message boards, Mr. Meide clearly was using the First
> and Second Amended Complaints to harass the Pulse Defendants
> in violation of Rule 11(b).

(Doc. 174 at 9-10 (emphasis in original).)[15]   Moreover, Plaintiff has not

---

[15] Again, Plaintiff does not argue that his state law claims, which were dismissed without prejudice to re-filing in the appropriate state court, make his pleadings as a whole non-abusive and the Rule 11 violations not substantial. *See Gurary*, 303 F.3d at 224 n.5.

rebutted the presumption in favor of awarding attorneys' fees as a sanction, as he has not shown that his First and Second Amended Complaints were *de minimis* violations of Rule 11(b), or that it would be unjust to award Defendants their fees after the filing of the First Amended Complaint, even if his state law claims were nonfrivolous.   *See Gurary*, 303 F.3d at 226.

As stated earlier with respect to the Centineo Defendants' Motion, Plaintiff's arguments to disallow the Pulse Defendants' attorneys' fees incurred after June 11, 2020 are not well-taken.   Plaintiff does not argue that the hours expended on the case or the hourly rates are unreasonable. Therefore, based on a review of the billing records and considering the Affidavits of Mr. Salazar and Mr. Kirkpatrick, the undersigned recommends that defense counsel's already reduced hours be allowed as shown in the table below.   The undersigned further recommends that the requested hourly rates be found reasonable in light of counsel's respective level of experience and skill, the Affidavits of Mr. Salazar and Mr. Kirkpatrick, and the Court's own knowledge of the fees customarily charged for similar services in the Jacksonville, Florida legal market.   Thus, the Pulse Defendants should be awarded attorneys' fees as follows:

| Name | Experience | Time | Hourly Rate | Total: |
|------|-----------|------|-------------|--------|
| Attorney Richard Salazar | 30 years; Florida Bar member since 1991 | 127.9 (104.6 in 2019-2020; 23.3 in 2021) | $475.00 (in 2019-2020); $525.00 (in 2021) | $61,917.50 ($49,685.00 in 2019-2020; $12,232.50 in |

| | | | | 2021) |
|---|---|---|---|---|
| Attorney Jarrett Davis (associate) | 3 years; Florida Bar member since 2018 | 16.2 (14 in 2019-2020; 2.2 in 2021) | $265.00 (in 2020); $300.00 (in 2021) | $4,370.00 ($3,710.00 in 2019-2020; $660.00 in 2021) |
| Paralegal Tabitha Pellegrene | Over 30 years, a Florida registered paralegal | 7.3 | $235.00 | $1,715.50 |
| Summer Associate Mia Larson | Third-year law student at the time of service; Florida Bar member since 2021 | 3.2 | $120.00 | $384.00 |
| Total: | | 154.6 | | $68,387.00[16] |

The lodestar in this case is $68,387.00.   While the Court may adjust the lodestar, the undersigned will not recommend an upward or downward adjustment as it has not been requested and the undersigned's independent review of the record does not demonstrate that it would be justified. Accordingly, the undersigned will recommend that the Pulse Defendants' Motion be granted to the extent they are awarded attorney's fees in the amount of $68,387.00.

Accordingly, it is respectfully **RECOMMENDED** that:

---

[16] The Pulse Defendants' Motion lists the total amount of requested fees as $68,442.50, but that appears to be a miscalculation.

1.     Defendants' Motions (**Docs. 171, 172, 174**) be **GRANTED to the extent stated herein**.

2.     The Clerk of Court be **DIRECTED** to enter a judgment in favor of Defendants, Laura Anthony and Michael Anthony, and against Plaintiff, Scott Meide, for attorneys' fees in the amount of $12,632.50, and a separate judgment in favor of Defendants, Laura Anthony and Michael Anthony, and against Plaintiff, Scott Meide, **and** his counsel, William H. McLean, **jointly and severally**, for attorneys' fees in the amount of $11,007.00.

3.     The Clerk of Court be **DIRECTED** to enter a judgment in favor of Defendants, Gregory Centineo, Julie Natale, Agnes King, and John King, and against Plaintiff, Scott Meide, for attorneys' fees in the amount of $43,215.00.

4.     The Clerk of Court be **DIRECTED** to enter a judgment in favor of Defendants, Pulse Evolution Corporation, Evolution AI Corporation, John Textor, Jordan Fiksenbaum, and Frank Patterson, and against Plaintiff, Scott Meide, for attorneys' fees in the amount of $68,387.00.

5.     The Clerk of Court be **DIRECTED** to terminate any pending motions and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on August 23, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Marcia M. Howard
United States District Judge

Counsel of Record